added to the requisitions of the Code of Practice, that there should be but one judgment on the original demand and the reconvention, has led us to the conclusion, that the District Court correctly acted on both.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

WESTERN DIST.

*Oct.* 1858.

STATE OF LA.
*vs.*
NORMENT ET AL.

compensation in reducing the plaintiff's claim, and partly as a judgmentagainst him in reconvention.

12L 511
45 1397
12L 511
49  913

## STATE OF LOUISIANA *vs.* NORMENT ET AL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE THEREOF PRESIDING.

The majority of the court were of opinion, that the district attorney had the choice of remedies, and could proceed against sureties in bail bond, by ordinary suit, and waive the summary mode of proceeding, under the statute of April 2, 1835. The state may select any legal means of instituting suit, which individuals may resort to.

Where the sureties on bail, produced the principal on the day, and when called, according to the tenor of their bond, who was arraigned, tried, and found guilty by the jury, on two indictments, and afterwards *disappeared; Held*, that the sureties were *not discharged*, because the bond stipulated, that " the principal shall appear at court, *and not depart thence without leave of the court*, which was not obtained in this case.

When the forfeiture of a bail bond has become a matter of record, it may be put in suit in the ordinary way, and perhaps in no other.

*Bullard, J., dissenting.* When there is a summary as well as an ordinary remedy provided by law, the party may resort to either at his option ; but in no case ought this option to be permitted, when the law has pointed out a specific remedy, and a resort to another would deprive the defendant of any advantage, and render his condition more onerous.

It is not so clear, that when the body of the *accused*, is produced by the bail, and notice given to the district attorney, the bail is not exonerated, without any formal *exoneratur* being entered. According to the English authorities, such would be the effect of a surrender by the bail.

This is an action, instituted by the district attorney, on behalf of the state of Louisiana, on the following bail bonds, against the sureties therein.

" Know all men by these presents, that we, C. W. Jackson, as principal, and James Norment and W. K. English, as sureties, are held and firmly bound unto E. D. White, governor, etc., etc., in the sum of three thousand dollars, for the true payment of which we jointly and severally bind ourselves, etc., this 22d December, 1835.

" The condition of the above obligation is such, that if the said C. W. Jackson, who now stands charged, and has been committed to the prison of the parish of Rapides, for having resisted the deputy sheriff of said parish, in the execution of legal process, *shall be and appear at the next term of the District Court*, to be holden in and for the parish and state aforesaid, on the third Monday in April next, to answer said charge, *and not depart therefrom without leave of said court*, then and in that case, the above obligation to be null and void, etc.          " C. W. JACKSON,
                                          " JAMES NORMENT,
                                          " WM. K. ENGLISH."

Another bond of the same tenor and date, in the penalty of five thousand dollars, which states " that the principal (C. W. Jackson) stands charged, and has been committed to prison, etc., for having resisted C. D. Goodwin, C. M. Calvit, and C. B. Curtis, in the execution of legal process, and for having assaulted and beaten the said Goodwin, Calvit and Curtis ; and for having forcibly and falsely imprisoned C. M. Calvit, and C. B. Curtis, etc." shall be and appear at the next term of the District Court, on the third Monday in April next, to answer such of the foregoing charges, as may be preferred against him, the said C. W. J., by the grand

jury, etc., *and not depart thence without leave of said court, etc.*"

The district attorney alleged, that the condition of said bonds were broken, by the non-appearance of the principal, (Jackson,) and that they were forfeited, and the sureties become liable. He prays judgment against the sureties, Norment and English, for the amount thereof.

The defendants pleaded that the action could not be maintained, because the statute of the 2d April, 1835, prescribes the only mode by which the district attorney can proceed to obtain judgment against bail, and this is not the mode prescribed.

2. That on the 2d day of the April term, 1836, they were called according to said act of 1835, to·produce the said C. W. Jackson, in court, and that in obedience to said call, they did produce said Jackson, *instanter,* in open court, and that they informed the court at the time, that by so doing, they were discharged from all liability, on the recognizance sued on, etc.

3. That the grand jury found bills of indictment against said Jackson, and at a late day of the term, he was duly arraigned on all of them, and actually tried and found guilty on two of them by the jury ; that he was tried immediately on his arraignment, on said indictment, and was in open court during all the first trial, and that he remained in court the greater part of his second trial ; was in court when the jury returned a verdict of guilty, and remained there after his conviction, for more than twelve hours, etc. For these reasons, they deny any liability under the bonds sued on, and pray to be dismissed with costs.

The facts of the case show, that at the term of the District Court, to which the parties were required to appear, *on being called,* the sureties brought Jackson, the principal, into court, according to the tenor of the bail bonds, who was arraigned, tried, and convicted by the jury, on two indictments, and before sentence was pronounced, he disappeared, and has not been retaken so as to be brought into court. The sureties thought they had complied with their obliga-

tions, by producing the principal, when *called at the term* of the court, to which they were recognized to appear.

At a late day of the term, when it appeared that Jackson had left the court house, and on being called failing to appear, a rule was taken against him and his sureties, to show cause, if any they could, why the recognizance or bail bonds, should not be forfeited ; but no proceeding seems to have been had.

The present suit was brought to the next term of the court, in the form of a civil action on the bonds.

The district attorney relied on the tenor of the bail bonds, and the non-appearance of Jackson, after he was tried and found guilty by the jury ; and the failure of the sureties to produce him, to show a forfeiture in order to recover.

The sections of the act of the 2d April, 1835, providing the mode of proceeding against sureties in bail bonds, and repealing the former law, are as follows :

" That the first section of the act to which this is a supplement, be, and the same is hereby so amended, that instead of the ten days notice, provided for by said section, it shall be the duty of the several district attorneys, in their respective districts, on the second day of each regular term of the district courts, (leave of the court first had and obtained) to call all persons, who may have entered into any bond, recognizance, or obligation whatsoever, for their appearance or their attendance at court, and also to call on the security or securities, to produce *instanter*, the person of such defendant or party accused, and upon failure to comply therewith, on motion of the district attorney, the court shall enter up judgment at *nisi* against both principal and security, according to the tenor of the bond, recognizance, or obligation ; *Provided*, however, that said judgment may be set aside, at any time during the term, upon the appearance of the defendant, or party accused, and motion to that effect.

" SECT. 2. *Be it further enacted, etc.*, That it shall be the duty of the clerk to issue as many certified copies of such judgment, within ten days after the adjournment of the court, as there may be parties, with one original, and shall

deliver the same to the sheriff of the parish, if the party has
his domicil in the parish where the court is held, or to the
sheriff of the parish where the party or parties may reside ;
Provided, the party or parties have a residence in the state,
but if the party or parties have no known place of residence
in the state, then the service shall be made on the attorney
ad hoc, which the court shall appoint to represent the absen-
tees, and after having served the same, the sheriff shall make
due return thereof to the clerk.

" Sect. 3. *Be it further enacted, etc.,* That on the second
day of the next regular term thereafter of said court, or at
any time during said term, (upon proof being made of the
service as provided for in the second section of this act, and
upon the party or parties failing to show good and sufficient
cause,) said judgment shall, and it is hereby made the duty
of the court to make final, and which may be executed, so soon
as the minutes are signed, if the amount be under three hun-
dred dollars, and if above that sum, in ten days thereafter,
without any notice being given of said judgment ; any law
to be contrary notwithstanding."

The district judge was of opinion, that from the tenor of
the bail bonds, the sureties were bound to produce the prin-
cipal from day to day, until they were discharged by the
court ; and the principal having absented himself before this
leave or discharge was obtained, the sureties were liable.
Judgment was rendered against them and they appealed.

*Brewer,* (*district attorney,*) for the plaintiff.

1. The sureties of Jackson were not released by his
appearance, when called on the second day of the term of
the court. The act of 1835, made it the duty of the district
attorney, to have all parties bound for their appearance at
court, called out on their recognizances on the second day of
the term, and in case they failed to appear, to have a judg-
ment *nisi* entered ; but if the parties appeared, when called,
no law or practice authorized the district attorney to pray
them into custody.

2. The appearance of Jackson, on a subsequent day of the

WESTERN DIST. term, and pleading not guilty to two of the indictments, did
Oct. 1838. not discharge his sureties from their liability. He afterwards
STATE OF LA. failed to appear to abide the judgment of the court in these
vs. cases, and there were two other indictments preferred against
NORMENT ET AL. him by the grand jury, to which he has never pleaded. His
sureties were bound by the tenor of their bonds not only for
his appearance at court, but that he should not depart with-
out leave of the court. His departure without leave of the
court, was, therefore, a forfeiture of the bond. 1 *Chitty*,
page 105. *Com. Dig. Bail, letter O, 2.*

3. The ordinary suit instituted in this case for the recovery
of the bonds, is proper. The act of 1817, made it the duty
of the attorney general, and several district attorneys, to pro-
secute and sue in all cases in which the state should be
interested. 1 *Moreau's Digest, page 27.* Under this act no
other mode was known than the ordinary mode of petition
and citation. The act of 1818, provided that bonds and
recognizances might be recovered upon motion, and notice
to the parties; but did not take away the right to pursue the
ordinary mode by petition and citation. 2 *Moreau's Digest,*
386. The act of 1835, only provides for the recovery of
bonds due the state, in certain cases, viz : when the parties
failed to appear on the second day of the term of court.
This act leaves the act of 1817, unrepealed. The right,
therefore, to pursue the ordinary mode by petition and
citation still exists.

*Winn,* on the same side.

This is a suit in the ordinary mode, against the sureties in
a bail bond, the tenor of which is, that the principal shall
appear from day to day until discharged by the court. The
principal afterwards failed to appear, and was never dis-
charged by the court, consequently his sureties are liable.

2. The state has the right to proceed on forfeited bonds,
in the ordinary mode of instituting suits. Every obligation
when due, or a forfeiture has accrued, gives a right of action,
and may be sued on by the party entitled to prosecute the
same. *Code of Practice,* 14.

3. The act of 1835, does not deprive the state of the ordinary remedy, and it is competent for it to seek the enforcement of recognizances, as in ordinary cases of suits or obligations, and waive the extraordinary remedy.

4. The act of 1835, is wholly inoperative in a case like this. It requires the parties to be called on the second day of the term, and if they fail, judgment *nisi* is to be entered, and a forfeiture and final judgment rendered at the following term, unless good cause is shown. Here the parties appeared when called, according to this statute, but the principal *disappeared* without leave of the court, and has not been produced by his sureties. Judgment *nisi* could not be entered on the second day of the term, and no final judgment could ever be rendered against the sureties. The state would, therefore, be entirely remediless, if this mode of suing is denied to it.

5. As respects the merits of this case, the principal was arraigned, and appeared; was tried and convicted on two indictments. After verdict, he absconded and has not since appeared. There was no new bond given, and the tenor of the first one is, that he shall continue in attendance until discharged. He was never discharged, but eloped.

6. He was at the time, and is now, in the custody of his sureties. They were never exonerated or discharged from their suretyship, because the principal was never surrendered. He must be surrendered in discharge of his bail on the indictment, and an *exoneratur* entered. *Comyn's Digest,* *verbo Bail; letter O, 2,* and *letter Q, 2.*

7. The principal is in the custody of the bail, until an actual surrender. Nothing but this, and a discharge entered on record, will exonerate the sureties. 1 *Chitty's Criminal Law,* 105.

*Roberts,* for the defendants, contended, that the act of 1835, was imperative as to the manner of proceeding against bail. It was the duty of the district attorney to proceed in the mode prescribed in the act, and in no other. He is excluded from the ordinary remedy by suit.

2. On the appearance of the principal in court, to stand his trial, the bail are necessarily discharged. The prisoner must give a new bond before he can be admitted to bail, for he is in the custody of the law officers.

3. In every case where a verdict of guilty is found by the jury, the prisoner cannot go out of the custody of the sheriff, without giving new bail ; and after conviction, and before judgment, a prisoner cannot be bailed without the consent of the prosecutor. 4 *Burrow's Reports*, 2539, 43, 45, 73. 1 *Chitty's Criminal Law*, 95, 105.

4. All the proceedings in criminal cases in this state, are required to be proceeded in, according to the principles and mode pointed out by the common law of England, with the modifications made by the legislature. 1 *Moreau's Digest*, 369, *section* 33.

5. The appearance of the principal, his arraignment, trial, etc., was sufficient to annul and discharge his recognizance. *State* vs. *Dunlap*, 10 *Louisiana Reports*, 99.

6. According to the English law, if the *exoneratur* is, by neglect, omitted to be entered, yet, if the prisoner appear, the bail is discharged, and an entry to this effect will be made. *Comyn's Digest*, *verbo Bail*.

*Dunbar*, for the defendants, contended, that the exception to the action should be sustained, because the act of the legislature of the 2d April, 1835, prescribed the only mode in which a recovery could have been had on a bail bond. See *Session Acts of* 1835, *page* 219, 220. That the act of the 9th March, 1827, gave to the attorney general and district attorney, discretionary powers to proceed in any manner they might think best to prosecute claims on behalf of the state. 2 *Moreau's Digest*, 416. But that this discretion had been taken away by the express repeal of the latter act, by the act of 1835, before mentioned ; that the act of 1818, (See 1 *Moreau's Digest*, 386,) had prescribed a mode of proceeding by ten days notice, but that the act of 1835, had also expressly repealed that mode.

2. That it was true that the rules of the common law of

England, as to *criminal prosecutions*, the forms of indictments, and the definition of crimes had been adopted in Louisiana, see 1 *Moreau's Digest*, 369, *sec.* 33 ; but that the mode of proceeding in England on a forfeited bail bond, by *estreating* it, and by *scire facias*, had not been in any manner adopted in Louisiana, but a particular mode of recovery pointed out by the statutes above referred to, which must be followed ; that this was rendered, if possible, more evident, from the act of 1837, by which the act of 1835, is repealed ; except the 7th and 8th sections, one of which is the section repealing the before mentioned act of 1827 ; that if there was any defect in the law of 1835 the bail had a right to protect themselves under it, and that the district attorney had no right to change the mode of proceeding at his pleasure, for the recovery of the bonds ; for, if even indulgence is granted by the court, or the nature of the action changed, the bail is relieved.  6 *Martin, N. S.*, 529.  The legislature could not have changed it so as to affect the bail.  1 *Peters' Condensed Reports*, 176.

WESTERN DIST.
*Oct.* 1838.

STATE OF LA.
*vs.*
NORMENT ET AL.

3. There is no law which authorizes a civil suit in the name of the governor, on a bail bond, and it was in vain to say, that because the law had prescribed a particular mode of procedure against bail, that it did not exclude other modes of proceeding.  This argument might have been good, if several modes had been prescribed, or if the legislature had not clearly manifested its intention of taking away all discretion or choice, as to the mode of proceeding, by the repeal of the act of 1827, above referred to.

4. The bail were relieved by the appearance of the principal, when called upon to produce him under the provisions of the act of 1835.  Security in an ordinary bail bond is only answerable for the appearance of the defendant. 1 *Chitty's Criminal Law*, 92, 105, 106.  *Hawk. book* 2, *chap.* 15, *sec.* 84.  *Bac. Ab. verbo Bail.* 4 *Blackstone*, 297.  3 *Ibid.*, 290 and 291.  When the defendant appears, he should be arraigned and tried, and if this cannot be done, the district attorney should pray the court to order him into custody. 10 *Louisiana Reports*, 101.

5. In this case, the defendant not only appeared and plead, but was tried on two of the indictments, and found guilty, and was present in court during the trials, and at the bringing in of the verdicts. Now he was not bailable after conviction. 1 *Chitty*, 93. 4 *Burrow's Reports*, 2545, 2539. 1 *Chitty*, 664. The defendant should have been committed during the interval between conviction and judgment, unless a recognizance had been given to appear and receive judgment, which is entirely different from the bail in the commencement of the prosecution. The defendant, Jackson, was then in the custody of the law, and not in the custody of the bail. If bail is not given, and the defendant does not appear, process of the court is issued to bring him in and force an appearance. Now the bail prevents the necessity of this process, by binding themselves to cause that to be done, to effect which, the process would be issued, to wit: the appearance in court of the defendant. As to this process, see 1*st Chitty's Criminal Law*, 337 *to* 370, *and* 4*th Blackstone*, *from* 297 *to* 323.

6. The act of 1835 not only points out the manner in which bail is *forfeited*, but the manner in which bail is to be *relieved*. This law makes the second day of the term the *appearance day*, and the sureties are to be called on that day and no other, to produce, *instanter*, the person of the defendant, and on *failure* a judgment *nisi* is to be entered against them, and it is a *consequence* that if the defendant appears, or is produced, there is no forfeiture, and there can be no judgment. Whenever the bail produces the defendant, when called upon to do so regularly, an *exoneratur* should be entered on record, but if the clerk, or officer of the court, fails to make the entry, the bail is nevertheless discharged ; more particularly, if the counsel of the opposite party have notice, as the district attorney had in this case. See *Comyn's Digest*, *verbo Bail*, Q. 2. And if the English law of bail is to be invoked against the defendants in all its rigor, they must also be entitled to its clemency ; for which see 1*st Chity*, 92, 93, 106.

7. The legislature of Louisiana, and the constitution, have

directed in what cases bail shall be allowed, but have not defined the liabilities of bail; and it is, no doubt, proper to refer to the English law for information, inasmuch as their system of criminal law is the foundation of ours, but that it would be manifestly unjust to be guided entirely by the rigor of the English law, disregarding its clemency, even although this clemency should be provided by acts of parliament.

8. Under the act of 1817, (see *Moreau's Digest, page 27,*) which has not been repealed, the attorney general and district attorney were directed to prosecute all claims of the state, and to appear on her behalf in all suits in which she might be a party, but this was nothing but the imposition of a duty in consideration of their salaries, and did not direct the manner in which suits should be brought on claims, any more than it directed that prosecutions should be by indictments; and, therefore, other acts were passed defining the modes of prosecution, and the recovery of claims, on behalf of the state, and that these must be pursued.

*Bullard, J.,* dissenting, the judges delivered their opinions *seriatim.*

*Carleton, J.*—This action is brought against the sureties of C. W. Jackson, to recover the sum of eight thousand dollars, the penalty of two bonds, in which they obligated themselves *in solido* with him to the state, conditioned for his appearance at court, in the April term of 1836, there to answer certain charges, and not to depart without leave of the court.

The petitioner alleges, as a breach of the condition of the bonds, that Jackson failed to appear as he was bound, and having departed without leave of the court, the defendants, his sureties, failed to produce him when thereto required.

The defendants, after excepting to the form in which the action is brought, aver, that they were discharged from their obligation, by the appearance of Jackson on the second day of the term, and by his arraignment and trial, at which he was present.

The cause was submitted to the court, who rendered judgment for the plaintiff, and the defendant appealed.

It seems from the statement of facts coming up with the record, that Jackson and his sureties appeared at court on the second day of the term, and were called on their recognizances at the instance of the district attorney ; that some days thereafter, he appeared again, and plead to two of the indictments, on which he was tried and convicted. It moreover appears, that proclamation was made for him after his conviction, but that he could not be found.

1. For the defendants, two grounds of defence are *mainly* relied on : first, that the plaintiff was restricted to the summary mode of proceeding against the sureties provided by the law of 1835, page 219, section 1, then in force, and that he had not his election to proceed *via ordinaria.* I think differently. The law of 1817, 1 Moreau's Digest, page 27, section 3, *provides,* that "the attorney general, and the several prosecuting attorneys of this state, shall be bound to prosecute, or sue in all cases, either criminal or civil, where the state shall be a party." This law is not expressly repealed by the act of 1835, nor does that act contain any thing contrary to, or irreconcilable therewith. *Louisiana Code, article* 23. Nor could there be any good reason assigned, even if the law were silent on the subject, why the state should not, as well as every other suitor, have their choice of remedies where more than one existed. Nor have the defendants any just ground of complaint against this mode of trial, it being more advantageous to them, especially as they might have availed themselves of the trial by jury.

<div style="margin-left:2em">The majority of the court were of opinion that, the district attorney had a choice of remedies, and could proceed against sureties in bail bonds by ordinary suit, and waive the summary mode of proceeding under the statute of April 2d, 1835. The state may select any legal means of instituting suit, which individuals may resort to.</div>

2. The counsel for defendants contend, secondly, that by the appearance of Jackson, on the second day of the term, and also at his arraignment and trial, his sureties were discharged from their recognizances by operation of law.

This point has been ably and elaborately discussed by counsel on both sides, and many authorities, mostly from the common law, cited and commented upon at length. Defendants' counsel has particularly drawn our attention to Chitty's Criminal Law, pages 93, 105 and 665. But it appears to

me, that this authority does not bear him out in the position he has taken: for it is not possible, that any construction put upon the language of the bond, can at all vary its plain and obvious meaning. The sureties there stipulate, that their principal shall appear at court, and "not depart thence *without leave* of the court, then and in that case the above obligation to be null and void, otherwise to remain in full force and virtue." The accused did accordingly appear, but *departed* thereafter without leave of the court, whereby the condition of the bond was broken, and the forfeiture incurred. It may, indeed, be hard for the defendants to be compelled to pay so large a sum of money, from an erroneous conception of their obligation. But the remedy, if any, is with the legislature, and not this court. I fully concur in the able opinion delivered by the district judge, and think his judgment ought to be affirmed.

*Bullard, J.*, dissenting.—At first, my opinion was that the judgment in this case ought to be affirmed, but upon more mature reflection and examination of the authorities, I have not been able to bring my mind to that conclusion. I will briefly state the grounds of my opinion.

I do not contest the general principle, that a party entitled to a summary as well as an ordinary remedy, may resort to either at his option. But in no case, in my opinion, ought this option to be permitted, when the law has pointed out a specific remedy, where a resort to a different mode of proceeding would deprive the defendant of any legal advantage, and render his condition more onerous. The present is an action of debt upon a penal bond. If the state has a right to maintain an ordinary action upon it, without observing the forms required by the act of 1835, it may be done at any time, at least within ten years, without any notice to the bail; even against the heirs of the bail, after the transaction has been forgotten, and no trace is to be found of it except the bond, and the minutes of the court, showing that the body of the accused was not produced, on proclamation being made.

WESTERN DIST.
Oct. 1838.

STATE OF LA.
*vs.*
NORMENT ET AL,

Where the sureties on bail produced the principal on the day, and when called, according to the tenor of their bond, who was arraigned, tried, and found guilty by the jury on two indictments, and afterwards *disappeared*: Held, that the sureties were *not discharged*, because the bond stipulated that "the principal shall appear at court, *and not depart thence without leave of the court,* which was not obtained in this case.

*Bullard, J., dissenting.* When there is a summary as well as an ordinary remedy provided by law, the party may resort to either at his option; but in no case ought this option to be permitted, when the law has pointed out a specific remedy; and a resort to another would deprive the defendant of any advantage, and render his condition more onerous.

WESTERN DIST.
Oct. 1838.
────────
STATE OF LA.
vs.
NORMENT ET AL.
The statute requires previous notice to be given, and the bail may, at any time before the judgment *nisi* is made final, produce the body of the accused, and exonerate himself. But if this mode of proceeding may be pursued, and the surety changes his domicil, the suit may be instituted in a different court, a court which never had cognizance of the principal matter. Suit might even be brought in another state, if he removes, and he would necessarily lose the advantage of surrendering the principal. Such a court would have no power to enter an *exoneratur*. Again, I take it for granted that no action of debt can be maintained, unless the plaintiff shows that he has absolutely a right to recover; that his right is not suspended by any condition, and that the plaintiff had done every thing required by the law of the contract, to entitle him to recover.

The act of 1835, makes it the duty of the district attorney, on the second day of each regular term of the court, to call all persons who may have entered into any bond, recognizance, or obligation, for their appearance or their attendance, and also to call on the sureties or securities, to produce the person of such defendant, *instanter*, etc., and upon failure to comply therewith, on motion of the district attorney, the court shall enter up judgment *nisi*. It is then made the duty of the clerk to issue copies of this judgment, to be served on the parties, and on the second day of the next succeeding term, or any day after, the judgment may be made final, on proof being made of the notice of the judgment *nisi*. *Acts of* 1835, 219. In the present case, the traverser did appear when called on the second day of the term. He was produced by his bail. The district attorney knew it, took notice that he was in court, and he was arraigned and tried at least on two of the indictments. At that time there was no default on the part of the bail. If his mere appearance did not discharge the bail, and they were still bound for his appearance from day to day, and even at the next term, as has been contended by the state, and as may be admitted for the purpose of this argument, then there was an existing recognizance for his appearance at the next term of the

court, and the bail could be put in default, the recognizance declared forfeited, and even a judgment *nisi* entered, only on the second day of that term. According to the argument, therefore, of the district attorney himself, it was only on the second day of that term that he could call the sureties and put them in default. Nothing, in my opinion, authorized the district attorney to enter a judgment *nisi* on any other day of the term, and the notice of such judgment cannot be dispensed with, according to the law existing at that time. But it is said the statute was entirely nugatory and ineffectual. That is no consideration for this court, which has no power to patch up defective legislation.

But is it so clear that by producing the body of the traverser, and giving notice of the fact to the district attorney, the bail was not, in fact, exonerated, without any formal *exoneratur* being entered? According to the English authorities, although the *exoneratur*. be, by neglect of the officer, not actually entered, yet, if the plaintiff be apprized of the surrender, *scire facias* against the bail shall be set aside, though the plaintiff's attorney knew not of the surrender. *Comyn's Digest, verbo Bail, Q. 2.* In this case, the district attorney was apprised of the fact that the defendant had been produced in court, in compliance with the recognizance, and he proceeded to conviction without ordering the defendant into custody, even after verdict against him. I have no doubt the bail thought himself discharged, but even if he was not, he could not, in my opinion, be put in default until the second day of the next term, for it is clear the court could not pronounce the judgment *nisi* on any other day of the term. In my opinion, therefore, the state is not entitled to judgment, because the bond was not forfeited according to the law existing at that time, and forms were not pursued, which were required by law to entitle the state even to a conditional judgment against the bail. I have not the least doubt but that the Court of Exchequer in England, under the strong equitable circumstances of this case would relieve the bail. Without assuming any such equitable powers, I think that at least we ought to hold the

*It is not so clear that when the accused is produced by the bail, and notice given to the district attorney, the bail is not exonerated without any formal exoneratur being entered. According to the English authorities, such would be the effect of a surrender by the bail.*

state to a strict compliance with its own laws, more especially in cases where the primary object of bail is to secure the personal appearance of persons accused of criminal offences. But it is contended that the attorney general is empowered to prosecute in all cases in which the state is a party; and, consequently, has a right to pursue any form which the law authorizes in ordinary cases. I deny that a general authority to sue authorizes him to pursue any other remedy than that which the law makes it his duty to pursue in particular cases. This general power is conferred by the act of 1817, section 3, which declares merely that the attorney general, and the several prosecuting attorneys, shall be bound to prosecute or sue in all cases, either civil or criminal, where the state shall be a party. 1 *Moreau's Digest*, 27.

The act of 1818, permitted judgment to be given, on motion, against bail, after ten days notice of such intended motion.

The act of 1827, has also been relied on as confirming this power. That statute makes it the duty of the attorney general, and district attorneys, within their respective districts, to pursue, on behalf of the state, such legal measures as they may deem expedient for the recovery of all claims of the state, the *recovery of which is not otherwise provided for;* and they are allowed a commission of five per cent. upon the amount recovered. 2 *Moreau*, 416.

This act gives a discretionary power except in cases in which the recovery is otherwise provided for. The recovery on bail bonds in criminal cases, is expressly provided for by other laws. It is made the duty of those officers to prosecute upon them as incidental to their duties in criminal prosecutions, for which they have a fixed salary, and they are not entitled to a commission on the amounts of penal bonds taken in such cases. But this last statute has been expressly repealed by the act of 1835. See *Acts of* 1835, 220, *section* 8. The discretion, therefore, vested in the attorney general, by the act of 1827, has been expressly revoked, and whence does he derive his power to pursue a remedy not only novel and unprecedented, so far as I am acquainted with the

practice, but variant from·that which it is made his duty to pursue under the statute in question.

My opinion is, therefore, that the judgment should be reversed, and ours be for the defendants.

*Martin, J.*—The defendants, who are the sureties on bail of one Jackson, charged with criminal offences, are sued in an ordinary action, in the name of the governor, in behalf of the state, on their bail bonds.

The defendants pleaded, that the act of the 2d April, 1835, page 219, prescribed the only mode in which the bail, in criminal prosecutions, can be sued; and, this mode not having been pursued, they ought to be discharged. Secondly, that on the second day of the term at which their principal was bound to appear, he and they were called, and they immediately produced him in open court, and that they were thereby discharged. Thirdly, that afterwards, and during the same term, the principal was tried and found guilty, and remained in court for more than twelve hours thereafter.

. Judgment was given against the sureties on the bail bonds, and they appealed.

It appears, that afterwards, and during the same term, the principal failing to appear and abide the judgment of the court, he and the defendants were solemnly called, and without avail. A rule was taken to show cause why the recognizances should not be forfeited. .

The counsel of the appellants have contended, that they were improperly sued in an ordinary action ; the law authorizing no proceedings against them, except the summary one prescribed in the act of the 2d April, 1835.

2. That they were discharged by the appearance of their principal, on his being called for the first time, at the term to which he was bound to appear.

3. That the act of 1817, having authorized the attorney general, and district attorneys, to carry on suits in which the state is concerned, without directing any mode of doing so, these officers are bound to carry on those suits in a manner which was afterwards prescribed.

4. That the act of 1835, having been repealed before the judgment appealed from was pronounced, it was improperly rendered.

The state, in my opinion, is in our court entitled to select any legal means of instituting suits which individuals may resort to. The general remedy in every case is by petition. Summary proceedings are authorized, both in favor of the state and individuals. Either of them may be resorted to at pleasure. If, however, the legislature has seen fit to confine the officers of the state to the summary remedy, they cannot resort to the ordinary mode of proceeding, by petition. This leads to the inquiry whether it has been done. The counsel for the appellants contends that it has ; and endeavors to prove it by the first section of the act of 1835, which requires the officers of the state, on the second day of each term, to call all persons who may have entered into a bond, or recognizances, to appear, or produce their principals, and on failure, to have a judgment *nisi* entered, etc. The call on such persons, only, is necessarily confined to the second day of the term. Persons who are bound not to depart from the court, without leave, may be called on any other day of the term, as, for example, when a prisoner is to be arraigned, tried, or sentence is to be passed on him, it would be absurd to say that the call, in such a case, is to be delayed until the second day of the following term. They are not embraced in the section referred to, and it is not clear that the proceedings on failure to appear, or produce the principal, in such cases is to be regulated in the manner prescribed in that section. When the forfeiture of the bond has become a matter of record, it may be put in suit, in the ordinary way, and perhaps in no other. It is unnecessary to inquire whether a forfeiture recorded on the second day of the term cannot be prosecuted also in the same manner. The object of the legislature was, to make it the duty of the officers of the state to call all persons bound to appear, in court, on the second day of the term ; and it does not necessarily follow, that because they provided a summary remedy, more onerous to the parties than an ordinary suit, inasmuch as it deprives them of a trial by jury, and, by being extremely expeditious,

*When the forfeiture of a bail bond has become matter of record, it may be put in suit in the ordinary way, and perhaps, in no other.*

shortens the period during which the bail may relieve themselves by a surrender, the state meant to abrogate the remedy by ordinary suit. The defendants in this case were bound not only for the appearance of their principal, on the second day of the term, but for his forthcoming in court. On this part of the case, I think the District Court did not err in sustaining the suit.

2. The second ground taken by the counsel for the appellant is untenable.

3. I have already said that the provision for summary proceedings, does not abolish that by petition, in the ordinary manner.

4. The act of 1835 provided only for proceedings in a summary way. It said nothing of proceedings by petition. The repeal of it could not prevent a judgment on such a proceeding.

I feel no hesitation in saying that the defendants appear to be the victims of their misconception of the act of 1835, and to have thought themselves discharged by the appearance of their principal at the second day of the term. The words of the act appear to me calculated to induce such an error. But this circumstance cannot influence the judgment of the court.

I conclude that the judgment of the District Court is correct. The junior judge is also of that opinion, and we constitute a majority of the court.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.