### No. 3418

### Second Circuit

## CORDRAY v. STANDARD OIL CO. OF LA.

(November 8, 1928. Opinion and Decree.)
(December 16, 1928. Rehearing Refused.)
(January 28, 1929. Writ of Certiorari and Review denied by Supreme Court.)

E. J. McLeroy, of Center, Texas, and Crow and Coleman, of Shreveport, attorneys for plaintiff, appellee.

T. M. Milling; F. L. Hargrove and E. C. McCallum, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE.

REYNOLDS, J.   Plaintiff alleges that he was employed by defendant in operating machinery in drilling a well for oil,. and that in the course of his employment it became his duty

"To stoop and lift a heavy 'sheave wheel,' weighing approximately 200 pounds, around which a cable runs, which caused petitioner to have to brace himself against a pole and lift the heavy implement, while the cable was around it, and because of a sudden slip of petitioner's foot, or a jerk of the 'sheave wheel' which petitioner was lifting, and because of the sudden, severe and heavy strain upon petitioner, his intestine, known as the duodenum, was torn from petitioner's stomach at or in the region of the pyloric orifice or opening at the lower extremity of the stomach; that said injury caused immediate and excruciating pain to petitioner, and necessitated his calling an attendant for relief at once, which he did, whereupon petitioner immediately collapsed, and it took several hours to revive him at a hospital later"

He further alleges that he was earning $5.00 a day or $35.00 a week and that in consequence of his injury he is permanently totally disabled to do work of any reasonable character.

He asked for judgment for $20.00 a week for 400 weeks, the first installment to be decreed due August 17, 1927, with legal interest on each payment from its maturity until paid, and for the further sum of $250.00 for medical, surgical and hospital expenses.

Defendant admitted that the plaintiff was in its employ and was earning the wages alleged, but denied all of the other allegations of his petition.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendant for $20.00 a week for 26 weeks, the first payment being decreed due August 17, 1927, and for $10.00 a week for an additional period of 26 weeks, the first payment being decreed due February 17, 1928, with legal interest on each installment from its maturity until paid, and for the further sum of $250.00 for medical, surgical and hospital expenses, with legal interest thereon from the date of the judgment, and for all costs of suit, and the defendant appealed.

## OPINION.

The record presents for our decision a question of fact, namely, was the perforation of plaintiff's duodenum caused by

"A sudden slip of petitioner's foot, or a jerk of the 'sheave wheel' which petitioner was lifting, and because of the sudden, severe and heavy strain upon petitioner"

as petitioner avers, or by the sloughing off of the tissue of the intestine in the regular course and as a natural result of the progress of an ulcer of the duodenum from which petitioner was suffering, as contended by defendant.

Plaintiff was employed by defendant in connection with the operation of a well-drilling rig, and he testified:

"Q. Mr. Cordray, what were you doing on the day that you claim you were hurt?

"A. We was lifting pipe—tubing.

"Q. Well, explain to the court how you did that?

"A. You have to string up a block—string up three lines and slip the pipe up. You could not pick it up with one line; you have to string with three, so there would be strength; it would be strong.

"Q. Well, does that necessitate your going up on the derrick?

"A. Yes, sir; you have to.

"Q. Why?

"A. You pick the sheave up to cross the line to string up.

"Q. Pick up the sheave?

"A. Yes, sir.

"Q. How high was this sheave wheel on this day, above the bottom of the derrick?

"A. From the derrick floor to the top?

"Q. Yes.

"A. I think it was about sixty-four feet; double derrick.

"Q. Well, what were you doing at the time you say this accident happened?

"A. I had went up there to change the line back to string the block.

"Q. Who, if any one, went with you to assist you?

"A. Kilpatrick.

"Q. Well, in doing that work, just what did you have to do?

"A. We had to pick our line up and tie it to the gin pole and then we had to pick our sheave out of the crown block and turn our line back.

\*　　\*　　\*

"Q. How large a wheel, and approximately what did that sheave wheel weigh?

"A. It is a pretty large wheel. In my estimation it weighs something like two hundred pounds.

\*　　\*　　\*

"Q. Well, when you went to pick up that, or did pick it up, or endeavored to pick it up, what, if anything, happened to you, what did you experience?

"A. Well, when I picked up that sheave, it seemed that Kilpatrick didn't make an effort to pick it up and I went ahead and picked it up—it seemed like something grabbed me in my side.

"Q. In the right side of your stomach?

"A. Yes, sir.

"Q. What did you do, immediately after that?

"A. Right after that, I came down the derrick.

"Q. What did you do then?

"A. I walked over to the brake with the thought that maybe it would quit, and it didn't, and I asked Atwood to take the brake, that I was getting sick and cramping. I went out and taken a drink of water, and when I did, I could not get up, I was cramping so I couldn't move."

He further testifies that this occurred about 11 o'clock in the forenoon and that he lay around until about 7 o'clock in the evening of the same day, when he was taken to a sanitarium and there he was operated on the same night.

Doctor C. O. Woolf testified that he was the surgeon in charge of the sanitarium to which plaintiff was brought and that he operated on him, and that:

"Q. Detail, doctor, what you found the patient suffering with at the time?

"A. He had a large ruptured duodenal ulcer.

"Q. To what extent, doctor, had the duodenum been ruptured?

"A. There was a hole in the base of the ulcer about large enough to admit a lead pencil.

"Q. The portion of the human anatomy known as the duodenum is the extended lower region of the stomach?

"A. It is the first part of the intestines just below the end of the stomach. This was about an inch from the pylorus.

"Q. What did you do, doctor? What did you do? State what you did?

"A. I resected the ulcer; closed that opening, and did a gastrojejunostomy.

"Q. Did you undertake or endeavor, doctor, to do a permanent job, or was it a temporary measure only?

"A. It was meant to cure.

\* \* \*

"Q. \* \* \* What would you say as to the ability or capacity of the plaintiff to do just ordinary work in a reasonable time after the operation, as compared with his capacity to do ordinary work with the ulcer that existed prior to the operation?

"A. I think he should be able to do it after a reasonable time. As I say, care and diet should be used for at least a year after an operation of that type."

Several other physicians were also called as medical experts and all of them testified as to the immediate effects of a bursting of the duodenum said that the perforation instantly causes intense pain.

Doctor E. L. Sanderson said:

"Q. What, if anything, will or may cause rupture of a duodenal ulcer?

"A. Well, occasionally a duodenal ulcer will rupture without cause, but it is a very rare thing that a duodenal ulcer ruptures without some effort. Sometimes it is coughing, sometimes a strain, but it usually is some undue strain that actually precipitates the breaking of the ulcer. I never saw one but what you could trace to some effort or strain, that is, a ruptured duodenal.

\* \* \*

"Q. Well, if it had been ruptured, doctor, large enough for a lead pencil to be passed through the opening before he received this strain, what would have been his condition?

"A. As soon as the rupture takes place, an acute pain sets in immediately."

Doctor J. A. Hendrick testified:

"Q. Now, Doctor Hendrick, this plaintiff testified this morning that on the day of the attack he was on the top of a derrick with another employee of the defendant company, lifting a pulley known as a sheave, for the purpose of changing some lines. That they lifted that pulley, and after doing that he climbed down the ladder from the top of the derrick to the derrick floor, walked across the derrick floor, got off of the derrick and got a drink of water, came back up on the derrick and had hold of the handle of the brake that works on a sort of clutch that is on the derrick floor. In your opinion, as a physician, and from your experience with ruptured duodenal ulcers, do you think that a man could do that without exciting considerable notice from his fellow employees, if he had a ruptured duodenal ulcer?

"A. As soon as you get the rupture, the first thing that happens is immediate severe pain. Now the man might climb down from the derrick, but he would be in severe pain when he done it. It is similar to a gunshot wound in a way. A man can walk with a gunshot wound, but he is suffering enough to know it.

"Q. Do you think that his suffering would be so acute that it would be noticed by those standing on this derrick floor with him?

"A. Yes; his suffering would be intense.

"Q. In other words, if that rupture occurred while he was at the top of the derrick, assuming that he did climb down the ladder after that, he would be suffering intense, acute pain that would be noticeable to any person standing around?

"A. Oh, yes; when you have a rupture, you have immediate pain with spasm of the muscles. The stomach gets as rigid as can be.

"Q. Does that rupture or perforation produce a certain amount of shock also?

"A. Yes, sir.

\* \* \*

"When a man has a perforated ulcer, there is intense pain in the abdomen, it is most intense. One of the diagnostic features of an ulcer is sudden, sharp pain in

462

the abdomen, and the abdomen becomes very rigid; board like. That is what we call it, board like. That is one of the diagnostic features. It is sudden, just like that (witness snapped his fingers). There is pain from the ulcer preceding the perforation, because the ulcer is advancing, sloughing, eating into the coat of the bowels; but when he has the perforation, that is sudden pain, and he can tell you the time, just to the minute, that it happens. It is just like that (witness snapped his fingers). Then he suffers intensely after that.

* * *

"Q. As he went on, of course that pain continued increasing while the condition was there?

"A. Well, that pain immediately is ninety-nine per cent; there may be an increase of one per cent, but it is intense from the first."

Doctor Frank Walke testified:

"Q. Doctor Walke, when a duodenal ulcer perforates or ruptures, what is the effect upon the patient?

"A. He is seized with great pain, and he usually falls, just like being shot by a bullet. It is very sharp and excruciating.

"Q. Is that practically instantaneous?

"A. Immediate.

"Q. Do you think, in your opinion as a doctor, and from your experience with these cases, and so forth, that a man could climb down a ladder leading up to the top of a derrick, some sixty feet, as a normal person, walk around the derrick floor, go over and get a drink of water, and come back and start to take hold of the handle of the brake, after he had ruptured a duodenal ulcer?

"A. No, sir; he could not have done it; I don't think.

"Q. Suppose a man with a duodenal ulcer is sick, that is, some time preceding the actual rupture or perforation, what are his symptoms then?

"A. Well, there is usually a certain amount of acute pain, which varies in accord with the amount of ulceration, and then there will be the symptoms of erupting gas, belching, and there will be discomfort around the stomach, around in that area. Then, when the ulcer actually perforates, there is so much shock to it, that a person usually falls to the ground,

wherever he is. When walking on the street, he falls. If this man had a perforation, he would have fallen down the derrick; he could not have climbed down without assistance.

* * *

"Q. Is it not possible, doctor, that that was what happened, the perforation there?

"A. I think not, because I think if that had been the case, he would not have finished the job; he would have had to have been lifted down off of the derrick.

"Q. Or fallen off?

"A. Or fallen off."

Plaintiff testified that he was in excellent health up to the time of the event in question, but A. W. Atwood, one of his own witnesses, testified:

"Q. Do you know of any disability he had ever had during or prior to that time?

"A. Well, he had complained of stomach trouble before.

"Q. When?

"A. I kept the time myself, and there were a few days he was off. We gave him straight time, but he was off a few days sick, and he was throwing up when he ate.

"Q. When was that?

"A. That was along somewhere near a month before he got hurt.

* * *

"Q. Immediately after he came down off the derrick, the plaintiff, Willie Cordray, did he make any complaint?

"A. Yes, sir.

* * *

"A. He didn't say anything about an injury. When he came down, off the derrick, he got a drink of water and walked back to the brake, and about the time he taken hold of the brake, he said: 'Shorty, come take this. I am getting sick.' And I stepped over and took hold of it, and he dropped off the floor to the ground and grabbed his stomach, and I thought at the time he was pretty warm, and may be he had drunk too much water and was cramping."

In a suit under the Workmen's Compensation Act it is incumbent upon the plaintiff to prove the fact of an accident happening to him in the course of his em-

ployment and a causal connection between such accident and the disability complained of by him, and we do not think such proof has been made in this case. On the contrary, in view of the testimony of the physicians that duodenal ulcer ruptures by the ulcer eating through the tissue or the sloughing off of the tissue of the duodenum in the natural progress of the ulcer, as well as by strain, and that intense pain and total disability instantaneously follow, we conclude that the cause of the rupture was not strain from the lifting of the sheave wheel or a slip of petitioner's foot or a jerk of the sheave wheel, as contended for by plaintiff, but to the sloughing off of the tissue of the duodenum in the natural course of the progress of the ulcer.

Consequently, the judgment appealed from is erroneous and must be reversed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that plaintiff's demands be rejected and his suit dismissed at his cost.