## ZELINSKY v. CITY OF SHREVEPORT. *
### No. 4525.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1933.

Isaac Abramson, of Shreveport, for appellant.

A. M. Pyburn, of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, and amendments thereto), alleging total permanent disability, and prayed for judgment in the sum of 65 per cent. of his weekly wages for a period not to exceed 400 weeks.

The injury alleged to have been received by plaintiff is a hernia on the right side, near an old scar of an appendectomy performed a number of years before.

The defense is that there is no hernia on the right side, there being only a potential hernia, and the accident alleged did not cause the potential hernia.

The lower court rejected the demands of plaintiff, and he has prosecuted this appeal.

Plaintiff had been employed by defendant for 18 years prior to the alleged accident as a blacksmith; his principal duties being to perform the woodwork on trucks and wagon bodies. At the time of the alleged accident, he was receiving $46.20 per week. On the morning of May 15, 1930, plaintiff was removing the body of a heavy cart from the axle. He was lifting the body without help, and had raised it above his head when the hook attached to the body caught him and prevented him from getting rid of the body. The weight was too much to hold for any length of time, so he went back, releasing the body, and dropped to the floor. He felt his side double up, and a pain struck him in the side. His helper picked him up, and assisted him to his car, where he lay down on the running board about two hours. He felt better, and then went home. Plaintiff went to bed after he got home, but later in the day went to the office of Dr. Williams. Later on in the afternoon Dr. Williams was called to plaintiff's home to see him.

This is plaintiff's version of the accident and the injury received, and is not contradicted by any one. His helper was present at the time of the accident. At the time of the trial, the helper was still in defendant's employ, but was not used as a witness. We therefore feel justified in holding that the accident happened as detailed by plaintiff. ·

The evidence is conclusive that plaintiff has not worked since the date of the accident, and at the time of trial in the lower court was totally incapacitated to perform hard labor, the only kind he was ever capable of performing, being a man of little education. Defendant did not pay compensation to plaintiff, but for a period of time paid to him his regular wages of $46.20 per week, until it had paid him a sum of $1,309, when it ceased making the payments. There is considerable testimony to the effect that plaintiff had not been able to perform much hard labor for a long period of time prior to the accident, due to his physical condition, and had been used for errands and piddling jobs. However, he was working the day of the accident, and what he did prior thereto is immaterial.

Plaintiff relies solely on the injury to the right side as the basis for his claim to compensation. Three doctors testified that there was a true hernia in the right side near the old appendectomy scar. Three other doctors testified it was not a true hernia, but only a potential hernia. This is likewise immaterial, for it is certain there was at least a bulging of the right side, and a potential hernia which disabled him for performing any work of reasonable character, which he was ordinarily capable of performing before the condition arose. The only question then for us to determine is, Was the condition in the right side the result of the accident of May 15, 1930, or was the then prevailing condition aggravated by the accident?

· The most damaging testimony to plaintiff's contention is given by the doctor of his own choice, Dr. Williams, who was called in to see him on the day of the accident, and who treated him thereafter for several months, and whose testimony was offered by plaintiff. He testified that he was called to see plaintiff on May 15, 1930, and made an examination of him; that at the side of the scar left from the appendectomy, he found a slight bulging of the abdominal wall which he described as a weakness in the lining of the wall of the abdomen that allowed a bulging there more than on the other side; that plaintiff was complaining of pain in the chest, and that his ex-

*Rehearing denied April 28, 1933.

amination satisfied him that the cause of his trouble was above the diaphragm at that time, and the hernia now complained of is below the diaphragm. At that time, which was only a few hours after the accident, plaintiff was not complaining of any pain in the region of the right side, and that traumatic hernia, or the condition of his abdomen, had nothing to do with the symptoms for which he treated him. He had heart disease to deal with first, or the chest trouble. Dr. Williams treated plaintiff from May 15, 1930, until September, and testified, "He didn't complain of any pains when I treated him of a nature which would come from a general weakness of the abdominal walls; the first course of treatment was for the condition in the chest and later, I treated him for colitis and intestinal trouble or constipation." Dr. Williams further testified that hernia, suddenly developed by trauma, would be accompanied by severe pain, weakness, nausea, and sickness. He further testified that plaintiff was suffering from a focal infection from his teeth, and that he found both inguinal rings enlarged, and that his condition could have come on gradually, caused from heavy work and lifting.

He is corroborated by three other doctors that traumatic hernia causes severe pain, and that plaintiff had a potential hernia in both inguinal rings and in the right side, which, they believed, to have been brought on by a general weakened condition, due to heart disease, angina pectoris, and colitis, and all agree there is no way to tell of how long standing a potential hernia is after the first 2 weeks, and therefore could not tell of how long standing plaintiff's condition was. They also show that trauma could not produce a potential hernia in both inguinal rings and the right side at the same time, that it will always produce hernia in only one place; that trauma could not produce bilateral hernia, and that plaintiff had a potential hernia in both inguinal rings and in the right side; therefore it was caused from a general weakness of the system.

It was from 6 to 8 months after the accident that the doctors, other than Drs. Williams and Johns, examined plaintiff, and they had no way of knowing of how long standing the condition in plaintiff's side was. It is certain that he did not complain to Dr. Williams of pain in his side on the day of the accident or until Dr. Williams ceased treating him in September, and, under the testimony of all the doctors, this fact does away with the theory that the condition of plaintiff's side was caused by the accident of May 15, 1930. The condition was there on that date, but was not paining him, and therefore must have been of long standing and not caused by trauma of that date. Further, the testimony is that the condition of his side at the time of trial was improved, as compared to the date

of the accident; therefore it was not aggravated or accelerated by the accident.

Plaintiff showed that he was operated on for appendicitis in 1923, and that 2 years later there were no signs of hernia near the scar. His condition from then on until the date of the accident, he claims, was good. He claims to have had no sickness up to the date of the accident. He is corroborated in this by his foreman, who states he was not able to perform hard work for several years prior to the accident, and was given light jobs and errands to run. The medical testimony is convincing that he was suffering from heart trouble prior to the date of the accident.

The lower court found that plaintiff had failed to prove his case, and we find no error in that judgment. It is therefore affirmed, with costs.

MILLS, J., recused.