## PACE v. STANDARD OIL CO. OF LOUISIANA.
### No. 4617.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Rehearing Denied July 15, 1933.

Malcolm W. Feist, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit under the Employers' Liability Act of Louisiana (Act No. 20 of 1914 and amendments thereto), claiming total disability due to an injury received in an accident which occurred while he was performing duties he had been employed to perform, and that the accident and injury arose out of his employment. The accident and injury alleged are set forth in articles 5, 6, 7, and 8 of plaintiff's petition, as follows:

"That on or about the Seventh day of February, 1932, between the hours of 1:30 and 2:00 A. M. your petitioner, while employed by defendant company and while performing his duties as a pumper for defendant went to a well of defendant located on the Barry Lease in Caddo Parish, Louisiana, the well being well No. 6; that petitioner went to said well for the purpose of oiling and seeing that the machinery pumping said well was operating in good condition; and that petitioner having oiled said machinery, which was in the course of his regular duties at his regular place of business with said defendant company as pumper, and while on the premises and works of the said defendant company was going from the rig of well No. 6 on the Barry Lease to the engine room on said leased premises, all being on the premises owned or leased by the Standard Oil Company of Louisiana, and in walking from the one place to the other your petitioner fell through a board walk his right leg slipping through the hole to the hip. That as a result of the fall petitioner suffered bruises in and about the portions of his leg that came in contact with the board walk, and in addition suffered a traumatic injury to his right hip and strained and wrenched same considerably as well as his back; that at the time of the fall a blow was struck to his right hip causing pain and soreness in the hip joint and in the region of the right thigh.

"That at the time petitioner did not regard his injuries as serious, and continued to work for the defendant for one month thereafter or longer. That petitioner had worked for defendant company eleven years, had always served defendant faithfully, and was disinclined to stop work or make complaint because of an injury with whose ultimate results he was not familiar at the time. That petitioner continued to work for the defendant company as aforesaid even after his injuries and with pain and suffering until on or about March 24th, 1932, when he was unable because of pain and physical affliction following his injury to work any longer, the injury having become progressively worse in the manner to be detailed hereinafter.

"Your petitioner shows that at the time of the accident he was a well and healthy

man and had always been able to perform the most arduous duties for the Standard Oil Company in the course of his employment with them for a period of some eleven years; that immediately after the accident related above and as a direct, sole and proximate cause thereof a progressive degeneration of the nerves and atrophy of the muscles and ligaments in the region of his right hip occurred, that petitioner's right hip, back and joint became affected with neuritis and your petitioner avers that said neuritis was due particularly to the nerve degeneration caused by the fall that petitioner suffered. Petitioner further avers that his right leg became at least one-half inch shorter than his left leg, and petitioner has become totally incapacitated to do any work whatsoever and is forced to walk upon a crutch and cane, and limps to a marked degree. That plaintiff's present physical condition is as just set forth, and incapacitates him from doing any manual labor.

"Your petitioner further shows that when his injury had progressed to the point that he was unable to perform the labor that was required of him in his employment with defendant company he consulted physicians, and has by them been advised that he is now suffering from neuritis of the Lumbo Sacral Plexus, which condition prevents him from working manually, and which condition will forever prevent him from working manually or doing any other kind of work or labor of any character whatsoever. That your petitioner notified the defendant of the occurrence of said accident and injury during the first week of April, 1933, and of his inability to thereafter work for it due to the injury he had suffered. That petitioner had at first hoped that it would not be necessary to leave the employ of the defendant company and worked for them in the performance of his regular duties for some time after the accident he suffered on or about February 7th, 1932, but by reason of the shortening of his right leg and the constant and progressive degeneration of the nerves, muscles, and ligaments in the region of his right hip and the atrophy of the nerves and muscles of that particular region (with all of which ailments he is now troubled) he was finally forced to leave the employ of the defendant company."

He prayed for judgment in the amount of 65 per cent. of his weekly wage for a period not to exceed 400 weeks and for $250 medical expenses.

Defendant admitted the allegations of employment and the wage alleged, but denied that plaintiff was injured within the course of his employment or that any accident and injury to plaintiff arose out of his employment. It denied that the accident alleged by plaintiff ever occurred, and set up other defenses unnecessary to relate.

The lower court rejected plaintiff's demands, and he has prosecuted this appeal.

■ Plaintiff alleged and contends that he was injured in an accident that occurred on the night of February 7, 1932, and it is therefore incumbent upon him to prove that there was an accident in which he received the injuries alleged. The only direct testimony offered by plaintiff in regard to any accident is his own testimony. He testified that the accident occurred on the night of February 7, 1932, and that he continued to work until March 23, 1932, at which time he quit; that he did not report the accident until April 11, 1932, or nineteen days after he had left the employ of defendant. He contends that between 1 and 2 o'clock a. m., when returning from oiling a well known as Barry No. 6, he fell through a plank walk; i. e., one leg went through up to the hip. He contends that the plank was not broken entirely off, but that one plank sagged several inches lower than the other, and that his foot and leg went between the two planks through the opening caused by the sagging of one plank lower than the other; that he extricated himself and returned to the vacuum plant, where another employee, who had left and gone after an ignition, soon returned; that he then told his fellow employee of the accident and instructed him to shut down Barry No. 6. He then went home; that the next morning he told another employee of the defendant of the accident.

■ Plaintiff is contradicted in almost every part of his testimony by the two employees he referred to. One denies he ever informed by plaintiff of the accident, and the other states that he was told by plaintiff of the accident about the time plaintiff ceased working. All the employees of defendant who had been working with plaintiff testified that there was no sagging of any plank in the walk and that there was no such condition of the walk as described by plaintiff. The employee who was at the vacuum plant on the night alleged testified that he did not go after an ignition and never left the vacuum plant after he arrived for duty at 11 o'clock that night, and that plaintiff did not leave to oil Barry No. 6 for the reason that this well had been shut down due to the vacuum being out of fix; that he did not shut down Barry No. 6 after plaintiff left. It had been shut off by plaintiff prior thereto as was the custom when the vacuum ceased working, and that, when the well was shut down, there was no necessity to oil it.

On March 17, 1932, plaintiff was examined by defendant's regular physician who examined all employees at regular intervals. At this time plaintiff did not inform the doctor of any accidental injury or of the alleged accident. The testimony of all other

employees of the defendant at work at this particular place is that the plank walk was about sixteen inches above the ground and was made of planks two inches thick, twelve inches wide, and ten to sixteen feet long; that both ends were nailed, the planks placed as close together as possible, and that there were crosspieces underneath every two or three feet. This is contrary to the testimony of plaintiff in regard to the construction of the walk. However, the evidence preponderates in favor of such a walk as described by the other employees, and it is difficult to imagine how the accident could have happened as described by plaintiff. The testimony preponderates that there were no sags in the planks and there was no place in the walk that plaintiff could have gotten his foot and leg through as he described it.

Plaintiff made no complaint until he was ready to quit his job. He did not report the accident to any one of the defendant's officers or to his superior until April 11, 1932. All this, coupled with the great preponderance of the testimony given by his fellow employees, is sufficient to overcome the testimony of plaintiff that there was an accident.

The lower court found that plaintiff failed to establish by preponderance of the testimony that the alleged accident occurred.

We find no error in that judgment, and the judgment of the lower court is therefore affirmed.