## HARRINGTON v. SEARS, ROEBUCK & CO.
### No. 4848.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1934.

Frank H. Peterman, of Alexandria, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MILLS, Judge.

Plaintiff is appealing from a judgment rejecting his demand for 400 weeks' compensation at $13.50 per week for disability resulting from a hernia claimed to have been caused by the strain of moving a heavy sink in the course of his employment by defendant.

Defendant denies the occurrence of any accidental injury and also that it is engaged in a hazardous business within the meaning of the Workmen's Compensation Act (No. 20 of 1914, as amended).

The lower court decided the case adversely to plaintiff on the legal issue in a well-considered written opinion. We prefer, without passing upon this question, to base our findings upon the facts.

Plaintiff was employed as head of the plumbing, stove, furniture, and toy departments of defendant's retail store in the city of Alexandria. His duties were to arrange displays, sell and order merchandise, and keep stock. He testifies that on December 24, 1932, at about 2 o'clock in the afternoon, a man, whose name he fails to remember, came to the store with a receipt for the purchase price of an undelivered sink. He and the customer went to the store room on the third floor, where the purchased article had been set aside. His testimony as to what then occurred is as follows: "A customer had purchased a sink and left the sink to be called for; the sink was stored on the third floor; they called for the sink and I went up to get it, and the porter was busy at the time and in order to get to the sink, I had to move several objects of plumbing fixtures, and one of these, I remember specifically, was a five and a half foot bath tub; after I moved the bath tub I got to the sink, had one of these two-wheel trucks that we roll heavy articles on, and I didn't experience any difficulty in moving the tub, but when I went to get the sink, understand the sink is 42 inches long, I put one hand on top of the crate and shoved it over and caught the truck with the other hand to shove it under and then as I bal-

anced the truck I pulled the sink back and felt a severe burning sensation in my left side."

He made no complaint and did not interrupt the wheeling of the 175-pound sink over to the head of the stairs from whence he and the customer lugged it down two flights of stairs and out the front of the store to the customer's car. Of all the people in a busy store on Christmas Eve, not a single witness is offered to corroborate this unusual story of the head of four departments and customer carrying a 175-pound sink, 42 inches high, down two flights of stairs and through the store, which employed a porter and a receiving clerk for such work, and which maintained a convenient hand-operated freight elevator to the store room which plaintiff says he many times operated. It is strange, too, that the purchaser's name should be forgotten, as knowledge of his name was necessary to identify the sink. He continued to work throughout the afternoon until, according to his testimony, the following occurred: "Yes, sir, I worked on through until I went to supper, about, well, this came up before I went to supper, that I got this pain again; it was about a quarter after seven, the store caught on fire on the second floor; I was standing by the door on the first floor and ran the length of the store to the stairs going to the second floor; at the head of the stairs I reached up to get the fire extinguisher, an object weighing 35 or 30 pounds; I pulled it off the wall and I felt the pain in my side again."

Again there is no corroborating witness and no complaint to any one of an injury. At 9 o'clock that night plaintiff was called into the office by the manager and laid off. Asked why he did not say something at that time about the injury, he answered: "It was hurting a little, but like I say, after he told me he was going to lay me off, that was impressed on my mind, I never thought of anything else."

All this, though he had been hurt several times before and had availed himself of the free medical service furnished by the employer and which the employees were encouraged to use. The next day the pain was so intense plaintiff went to bed, where he remained for a week without notifying defendant or calling medical attention. At the end of that time he went with a brother and one Paul Spera to Jackson, La., to work with them in installing pipes and gas fittings. He was unable to help drive the car down, and on the second day after arriving, for the first time noticed a bulge in his groin about the size of a walnut, which he exhibited to his companions. Acting upon their advice, he went to Baton Rouge, where Dr. Thomas Jones diagnosed a hernia. Plaintiff says that he was in pretty bad shape, with a badly swollen and inflamed stomach and two or three degrees of fever. He says he asked his brother to notify defendant and saw him write such a letter. His brother, appearing on the stand, fails to corroborate this. To the contrary, on January 25, 1933, we find plaintiff writing defendant as follows:

"Dear Mr. Strong, I guess you will be a little bit surprised at hearing from me down here. I have been here for three weeks, came down here to go to work but have been sick ever since I have been here. I went to a doctor in Baton Rouge last week for an examination and he tells me that I am ruptured and advised an immediate operation.

"I remember very distinctly when this rupture occurred but paid no attention to it at the time. It was two days before Xmas. I was moving some bath fixtures and things around on the third floor and had no help. I tried to move one of those 42-inch sinks when the pain struck me and this rupture popped out on my side but I thought it was only a muscle that was hurt and went on working. Then Christmas eve night when that fire broke out and I ran upstairs as you remember I had to go and change my clothes, then when I came back you called me to the office and told me I was out. I was so surprised and hurt at the suddenness of it all that I forgot to tell you about it then."

The discrepancies between the letter and plaintiff's testimony are very material. For instance, he puts the date of the accident as December 23. Why should he expect the manager to be surprised to hear from him at Jackson when, according to his testimony, his brother had written the particulars several weeks before? He has the rupture popping out on the 23d, when he testified he first noticed a protrusion at Jackson.

The only supporting testimony offered is that of his family as to his illness following Christmas Eve, that of his brother and Spera as to the Jackson trip, and that of Dr. Cappel that he was suffering from a left inguinal hernia on the day of trial.

█ It is not unreasonable that an accident should occur and a hernia result under such circumstances that no witnesses are available. In such cases, if the testimony of plaintiff is so clear, consistent, and convinc-

ing as to create a preponderance in his favor, he should have judgment. After careful consideration, we cannot conclude that such a case is made out herein. We cannot escape the unfavorable impression created by the lack of corroboration, the unreasonableness of the story which seeks to account for this lack, and the discrepancies between the testimony of plaintiff and his letter of notification. We cannot understand how a man could suffer twice on the same day the severe effects of traumatic hernia without immediate complaint. Cripps v. Grant Timber & Mfg. Co., 155 So. 286, this day decided by this court; Mustack v. Union Indemnity Co. (La. App.) 147 So. 749; Cordray v. Standard Oil Co. of La., 9 La. App. 458, 121 So. 220; Hart v. Swift & Co. Refinery, 12 La. 511, 126 So. 446; Curry v. Ohio Oil Co., 14 La. App. 551, 129 So. 563; Pace v. Standard Oil Co. (La. App.) 149 So. 130;. Zelinsky v. City of Shreveport (La. App.) 146 So. 769.

We therefore conclude that plaintiff has failed to sustain the burden of proof imposed upon him by law.

The judgment appealed from is accordingly affirmed.