No. 2646

Second Circuit

---

NOWASKI v. CONTINENTAL FLAT GLASS COMPANY, INC.

---

(June 30, 1926, Opinion and Decree)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant— Par. 156.**

An employee, entitled to recover compensa-tion under the Employers' Liability Act, is one receiving personal injury by accident.

Section 2, paragraph 1, Employers' Liability Act.

2. **Louisiana Digest—Master and Servant— Par. 154.**

"Accident", as used in the Employers' Liability Act, subject to certain exceptions, means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.

Section 38, Employers' Liability Act.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. F. X. Ransdell, Judge.

Action by Frank Nowaski against Continental Flat Glass Company, Inc. There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Long and McSween, of Shreveport, attorneys for plaintiff, appellee.

Barnette and Roberts, of Shreveport, attorneys for defendant, appellant.

STATEMENT OF THE CASE

REYNOLDS, J.  This suit was originally instituted by Frank Nowaski, claiming compensation from September 10, 1924, for an accident claimed to have been received by him inhaling and becoming completely penetrated with soda ash in August or September, 1924.

Citation was served June 5, 1925.

August 24, 1925, plaintiff died.  His widow, Mrs. Pearl Nowaski, individually and as natural tutrix of her minor children, Frank Nowaski, Jr., and Pearl Louise Nowaski, issue of her marriage with Frank

Nowaski, by petition and proper order of court, became plaintiff in the suit.

The defendant denied liability.

The case was tried and there was judgment in favor of the plaintiff and defendant appealed.

### OPINION

A careful reading of all the evidence in the case fails to reveal a positive, definite accident. Frank Nowaski was employed as an "all around" man, sometimes unloading cars, wheeling glass, etc., and sometimes at carpenter work, and in all of his work was more or less exposed to dust in and around the glass factory.

In July or August, 1924, he was taken sick and went home and never returned to work at the glass factory. The only evidence as to the cause of his sickness is that of Joe Bizat, pages 2 and 3:

"Q. How came him to quit?
"A. Well, he got some soda ash at Jewella and it was very dusty there and we worked in that dust and the next day he was sick and told me he could not work any more for a while, that he was very sick, very bad, and then he didn't start any more.

\* \* \*

"He said that he could not work, that he was sick on account of that he was burned with the soda; that is what he told me. Then when they came back they told me he saw the doctor.

\* \* \*

"Q. Was this a close room you were using it in—this soda?
"A. Well, it was a big hill and they were cutting the side from the top and when that fell on the floor they picked it up. Of course it made some dust."

Mrs. Pearl Nowaski testified, pages 13, 14 and 21:

"Q. Now when did Frank die?
"A. He died on the 24th of August.
"Q. Do you remember when he got sick?
"A. Yes, sir.
"Q. How long after his quitting from the glass plant was it before he got sick?
"A. Something like August or July; if I am not mistaken I think July.

\* \* \*

"Q. That is the year 1924?
"A. Yes, sir.
"Q. And he died August 24, 1925?
"A. Yes, sir.

\* \* \*

"Q. Did he tell you—since you were asked by counsel about the burn on his stomach—did he tell you the day that he quit that he was hurt with this lime?
"A. Yes, sir, he always said it was killing him. That is what he claimed."

This and similar evidence is relied on by plaintiff as showing that Frank Nowaski sustained an accident that caused his death.

No medical expert who attended Frank Nowaski at the time he quit work at the glass factory or immediately thereafter was called as a witness.

Doctor G. H. Cassity testified, page 23:

"Q. I will ask you to state the effect of those kind of compounds with regard to their ability to produce death or to aggravate a frail condition that might be already weakened?
"A. Well, I should say, in answer to the first part of your question, that the ability of those compounds to produce death would depend upon whether or not they contained an arsenic content; that is, to produce a reasonably short death."

Doctor M. L. Adair testified for defendant, page 41:

"Q. What is soda ash?

"A. It is carbonated soda dissolved in water.

"Q. Dissolved in water?

"A. Yes, sir, it is carbonated soda sulphur."

From this evidence we are unable to conclude that soda ash is a poisonous chemical calculated to produce tuberculosis from inhalation.

The only medical testimony as to the nature of Frank Nowaski's illness relates to his condition about March 23, 1925, and was given by Doctor R. A. Paine and Doctor M. L. Adair.

Doctor Paine testified, pages 35 and 36:

"Q. Do you remember having examined a man by the name of Frank Nowaski?

"A. Yes.

"Q. When did you make this examination, Doctor?

"A. March 23, 1925.

"Q. Will you please state to the court the nature of the examination you made, and your diagnosis of that case?

"A. The history that he gave was that he was thirty-seven years old, married, white, a glass plant worker; first took sick in July, 1924. That was his statement. He says that his trouble was caused by the inhalation of soda ash incidental to his work while in the employ of the glass factory. He denies all past illnesses; no spitting of blood; no nose bleeds; family history is negative for T. B., cancer, rheumatism and heart trouble. The physical examination today shows a general emaciated condition. Temperature of 103; pulse 120; respiration 35; systolic blood pressure 104; diastolic 64; maxium weight for the past 12 months 135 pounds; weight today is 110 pounds. Detailed lung examination is as follows: Right lung: apex to fifth rib anterior and to fifth dorsal spine dullness, many moderately coarse rales without coughing and do not disappear on coughing; increased framitus this area; voice and breath sounds increased this area. Left lung: lagging and dullness apex to third rib anterior and to seventh dorsal spine posterior; framitus increased; voice and breath sounds increased this area with many moderately coarse rales same as right lung. Near fifth dorsal spine interscapula area probably a small cavity formed well walled off.

"Q. And your diagnosis?

"A. The diagnosis was chronic pulmonary tuberculosis.

"Q. Doctor, I will ask you if the blood pressure was high or low?

"A. It was low.

"Q. In your opinion, what was the duration of this tuberculosis?

"A. Three years or over.

"Q. You mean at the time you made the examination?

"A. Yes, sir, at the time I made the examination."

Dr. M. L. Adair testified, page 40:

"Q. Did you take any photographs of Frank Nowaski?

"A. No I made a radiograph, an x-ray picture of Frank Nowaski.

"Q. When did you do that?

"A. The latter part of March—March 23, 1925.

"Q. Have you that picture?

"A. I have.

"Q. How many have you?

"A. One.

"Q. One?

"A. Yes, sir.

"Q. Mark that for identification 'Defendant-1'. (Same is marked 'D-1' for identification.) Will you please interpret or read this radiograph?

"A. Posterior-anterior view of chest shows increased pori-arterial density throughout both lungs. There are abnormal areas of increased resistance to the ray in the upper half of both lungs. There is cavitation in the upper lobes of both lungs. The evidence of fribrosis is small and there is no apparent calcification. This lack increased the gravity of the prognosis.

Diagnosis: Advanced pulmonary tuberculosis involving both lungs.

"Q. Doctor, what would you say was the duration of that tubercolosis?

"A. Well, off-hand and judging by the cavities I would say at least two years old at the time I examined him."

From this and all other evidence in the case we are convinced that Frank Nowaski died from tubercolosis of two or more years standing and that no definite, specific accident originated or accelerated the disease.

Our sympathies go out to the widow and children of the deceased and we would be glad if the facts were such as to require an affirmance of the judgment; but the judgment is not warranted by the evidence, and the law is inexorable that where this is the case the judgment must be reversed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed and that plaintiff's demands be rejected and her suit dismissed at her cost.