No. 3200

Second Circuit

HAMMONS v. EDWARDS

(June 28, 1928. Opinion and Decree.)
(July 14, 1928. Rehearing Refused.)
(October 2, 1928. Writs of Certiorari and Review denied by Supreme Court.)

Julius T. Long, of Shreveport, and A. L. Allen, of Winnfield, attorneys for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

WEBB, J. The plaintiffs, Columbus J. Hammons and wife, parents of Roy A. Hammons, who died on December 30, 1925, alleging that the death of their son resulted from an injury received by him on December 11, 1925, in an accident arising in the course and out of his employment at a saw mill operated by a partnership doing business under the name of Kinman & Edwards, of which decedent was an employee, and that they were dependent upon their son, within the meaning of the Employers' Liability Act (Act No. 20 of 1914), brought this action against the partnership and the individual members to recover compensation for the death of their son, and defendants appeal from a judgment rendered against them in favor of plaintiffs for the payment of weekly compensation at the rate of sixty-five per cent of the amount of the wages received by decedent per week, for a period not three hundred weeks.

The cause was formerly before this Court on an appeal taken by defendants

from a like judgment, and was remanded for further evidence, and on this appeal the defendants urge the same grounds for the reversal of the judgment as on the presentation of the former appeal, which are:

First, that the evidence does not establish that plaintiffs were dependent upon their son within the meaning of the statute; and,

Second, that the evidence does not establish that death resulted from an injury received by decedent in an' accident arising in the course and out of his employment with defendants.

(1) This position was considered in the opinion remanding the cause, and as there was not any further evidence offered on the second trial relative to this question, we find, as we did on the first appeal, that the evidence established that plaintiffs were dependent upon decedent within the meaning of the statute, for the reasons stated in that opinion.

(2) When the cause was presented on the former appeal, we found that decedent had an epidemic or infectious type of meningitis, which had caused his death, and that the evidence failed to establish that the disease had resulted from an injury shown to have been sustained by the decedent in an accident in which decedent, while engaged in carrying a piece of lumber from the ground or lower floor to the upper floor of one of the buildings had, in ascending, bumped his head against a rafter, but that the record indicated further evidence could be had which might show the connection between the injury and the disease, and we remanded the case for a new trial.

In this connection we will state that our finding that decedent had an infectious type of meningitis was not conceded by plaintiffs, as evidence was offered tending to show that he did not have meningitis of an infectious or epidemic type, and on retrial of the case additional evidence was offered by plaintiffs tending particularly to show that decedent did not have an infectious type of meningitis, but that the injury had caused a blood clot to form, or the wound received in the accident had become infected, and only incidentally, if at all, to show that if decedent had an infectious or epidemic type of meningitis it had been aroused by the injury, and counsel, while not abandoning the theory that if decedent had an infectious type of meningitis, which caused his death, that it was aroused by the injury, stress the theory that the injury had caused a blood clot to form, etc., thereby bringing about the illness and death.

The testimony of the physicians was voluminous, and as it related to several theories, it is difficult at times to determine as to which of the particular theories their testimony was directed. However, as we gather from the testimony, there are two general types of meningitis, one which may be caused by trauma, as by a blow or injury to the head, causing an injury to the brain or breaking down of tissues, or infection causing inflammation which may spread to or affect the meninges of the brain and spinal column, and the other an infectious type caused by a germ which finds its way into the system through the respiratory organs, and the evidence offered by plaintiffs on the retrial tended toward showing that decedent had the former type of meningitis, which is referred to as traumatic meningitis, and while a stronger case is presented for that theory than on the first trial, but rather refutes the theory that if decedent did have an infectious or epidemic type of meningitis that it was aroused by the injury.

The physicians whose testimony tended to show that the decedent had traumatic meningitis, with the exception of one, had never seen the decedent, and their opinions were based upon facts assumed as to the nature of the injury sustained by decedent and the symptoms indicated traumatic meningitis, and that any injury to the head sufficient to cause an abrasion of the scalp would be sufficient to bring about that type of the disease, they appear to have concluded that the injury had caused or brought about traumatic meningitis, and death; while the physicians who were of the opinion that decedent had an infectious type of meningitis, were those who had attended and treated him and who, in their treatment, had tests made in which it was found that there were germs of the infectious type of meningitis in the spinal fluid, and their opinion was based upon grounds clearly shown by the answer given by one of them as to his conclusions, in which he said:

"I based it upon the physical examination of the patient, the appearance of the spinal fluid, the negative reports from the radiologist and the reports of the pathological department."

The evidence does not indicate that the injury was regarded as serious at the time it occurred, or establish that it caused more than an abrasion of the skin, or that decedent was disabled to any extent immediately thereafter, but, on the contrary, it shows that after bumping his head, which occurred in the early morning, decedent continued to work throughout the day and the following two and one-half days until the plant shut down at noon on Saturday, and that decedent did not become ill until the following day, Sunday evening, while he was visiting friends; and the circumstances do not bring the case within that class where disability immediately follows the injury and disease develops in such period, where it might be said that the proof that the illness may have been caused by the injury would be sufficient, and as there is not any presumption which would support the theory that the injury caused the illness, it must be proven by a preponderance of the evidence.

There was not any evidence offered which could be said to tend to directly establish that any blood clot was formed or infection set in causing traumatic meningitis, and considering that there is in the record testimony of physicians who were equally as well advised of the nature of the injury and of the symptoms of decedent's illness as the physicans called by plaintiffs supporting the opinion of the attending physicians that decedent had infectious meningitis, we are of the opinion that the preponderance of the evidence establishes that decedent had infectious or epidemic meningitis and that the disease caused his death, and the remaining question is whether or not the evidence establishes that such disease was aroused by the injury.

On the first trial, as previously stated, evidence was offered tending to show that the disease, infectious meningitis, was aroused by the injury, which we did not think was sufficient to establish the contention, and while, as stated, the evidence on the retrial was not particularly directed to that question, yet the only evidence which we find on the second trial relevant to that question supports the defendants' position that the evidence did not show that the injury aroused the disease of epidemic meningitis, the testimony of one of the physicians called by plaintiffs as to this reading in part as follows:

"Q. Does a blow of this kind produce an epidemic form of meningitis?

"A. I don't think it could do that. A man might possibly be a carrier of the germs, and a blow might cause them to get started, but it is putting so many probabilities together that I don't think that a blow would figure very much in the production of spinal meningitis."

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that plaintiffs' demands be rejected at their cost.