No. 3707

Second Circuit

HAMILTON v. LA. CENT. LBR. CO.

(December 31, 1929. Opinion and Decree.)
(January 31, 1930. Rehearing Refused.)
(March 10th, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Julius T. Long of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey of Alexandria, attorneys for defendant, appellee.

ODOM, J. Plaintiff was employed by the defendant company as a section hand on a logging road at a daily wage of $2.25. He contends, and alleged in his petition, that on November 15, 1927, while at work in the course of his employment, he was lifting a cross tie and, due to the strain, the abdominal wall on the right side gave way, causing a hernia about half way between the groin and the waistline, which has totally and permanently disabled him to do work of a reasonable character. This suit is to recover compensation for 400 weeks. The defense is that plaintiff was not injured while at work for the defendant company. Plaintiff's demands were rejected by the lower court and he prosecutes this appeal.

Paragraph 17, Section 8, p. 115, Act 85 of 1926, provides that "Where there is real traumatic hernia resulting from the application of force directly to the abdominal wall, either puncturing or tearing the wall, compensation will be allowed."

Conceding that a hernia produced in the manner in which plaintiff says his was would entitle a laborer to compensation, as provided in the Act, the question to be determined in this case is whether, conceding that plaintiff is afflicted with hernia, the hernia was brought about by an injury sustained by plaintiff while at work for the defendant company. The fact that plaintiff at the time of the trial and for many months prior thereto was afflicted with hernia is not disputed. But the testimony convinces us, as it did the trial judge, that the hernia was not produced by any injury or strain received by him while at work for the defendant.

In the spring of 1926, plaintiff was operated on in the city of New Orleans for appendicitis. His case had developed to such an extent that the appendix had ruptured, and after the operation the wound had to be drained for a considerable time. Infection then set in and continued to such an extent that there was sloughing of the tissues and the wall of the abdomen in the region of the scar became so weak that it would not support the weight and pressure from within. Shortly after plaintiff returned from New Orleans, he was examined by Dr. Holloman who found that he was not in any condition to do heavy work and who suggested to him that he should receive further treatment, and later on Dr. Holloman proposed to him that he would go with him to Monroe to have an operation performed. Plaintiff himself says, and other witnesses testified, that in the year 1926, a knot or lump appeared on plaintiff's side at the scar left from the appendicitis operation. The testimony shows beyond question that the hernia which developed practically a year before plaintiff claims he received the injury, for which he now claims compensation, grew progressively larger and worse, which condition, the doctors say, is to be expected under conditions which they found after the operation. The testimony further shows that for some time previous to the date on which plaintiff claims to have received the injury for which he now claims compensation, he stated and complained that he was not able to do heavy work on account of his side. Dr. Holloman suggested to him that if he would wear a bandage or belt that he would be relieved to some extent of his trouble, and explained to plaintiff how to make and wear the belt. Plaintiff did wear the belt up until the time he claims to have been injured.

Four physicians who examined plaintiff, Doctors Sanderson, Holloman, Rand and Mecom, were each of the opinion and testified that plaintiff has what is termed a post-operative hernia. Dr. Mecom said:

"His condition is due at this time to the infection following the operation destroying the muscles in the region of the scarry tissue of the operation;"
and further testified that the hernia was not due to traumatic injury, but,

"It is due to the sloughing away or destruction of the abdominal tissues from the infection."

Dr. E. L. Sanderson, who testified for plaintiff, said:

"The examination shows a very large scar on the right side of the abdomen in the region of appendix operations and at the site of this scar is a large direct hernia. * * * It is what is known as a post-operative hernia. Evidently a hernia that has been produced by breaking through a weakened abdominal wall when an operation has been performed."

Such was the testimony of all the other physicians who examined plaintiff. Plaintiff himself testified that he had this "bulging" or knot on his side long before he claims to have received the injury. But he contends and testified that while at work loading ties and while stooping over, he felt a tearing, and that the hernia was then made larger. He further testified that he at once stated to those who were working with him that he had hurt his side and that he notified Mr. Wilson, the section foreman. The testimony of the witnesses on this point is very conflicting and somewhat confused. One of the witnesses stated that he did hear plaintiff make some complaint about hurting his side, but according to his recollection, it was a day or two before plaintiff quit work. Mr. Wilson, the section fore-

man, testified that plaintiff had on several occasions shown him the hernia and had complained that he was not able to do heavy work. Wilson denied that plaintiff told him that he had received an injury, but said he was aware of the fact that plaintiff's condition was growing progressively worse.

The record fails to convince us that plaintiff received any injury while at work on this particular occasion. He says that he felt something "tear loose" while at work, but he admits that he continued at the same work until the ties were all loaded and that he reported for work the next morning, but explained to the section foreman that he was not able to do heavy work and, for that reason, asked for a lighter job, when he was told by the section foreman that if he was not able to do the kind of work which he had been doing, he would have to look for another job. Plaintiff went to Dr. Holloman on the following day for treatment and Dr. Holloman says that on that occasion he found the hernia worse than it had been on previous occasions when he had seen it. But the doctor says that was to be expected because the hernia had been gradually growing worse all the time.

Counsel for plaintiff argues that even though the hernia was not produced by an accidental injury sustained, if the injury augmented or aggravated the condition which already existed, plaintiff would still be entitled to compensation. That is unquestionably true, but plaintiff's failure to prove that he received the injury as he alleges is fatal to his case. There is no question but that he is unable to do heavy, manual labor, but the testimony shows that his condition was brought about, not by accident received while at work, but by a hernia which developed as a natural and

necessary consequence of an abdominal operation, which condition grew progressively worse from a short time after the operation up to the time he quit working for defendant.

The judgment appealed from is correct, and is therefore affirmed; with costs in both courts.