No. 4008

**Second Circuit**
**(Second Division)**

**DANZY v. CROWELL & SPENCER LBR. CO., LTD.**

(May 7, 1931. Opinion and Decree.)

Fern M. Wood, of Leesville, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

CULPEPPER, J. Plaintiff sued under the Employers' Liability law of Louisiana

(Act No. 20 of 1914 as amended) to recover of defendant compensation in the sum of $13.65 per week for a period of 400 weeks, beginning November 12, 1930, with legal interest upon all past-due weekly installments. For cause of action plaintiff alleges he suffered an accidental injury on the 18th day of November, 1930, resulting in producing a hernia on his left side, while in the course of employment by defendant in the capacity of log cutter for defendant at or near Hutton, in the parish of Natchitoches.

From a judgment in plaintiff's favor for compensation in the sum of $6.75 per week for 400 weeks, defendant prosecutes this appeal.

Plaintiff alleges that, while engaged at work as above set forth, on said 18th day of November, 1930, he was sawing down a tree, and his "saw became jammed, straining your petitioner, and thus producing a hernia on the left side." He alleges the injury is permanent, and that he is totally and permanently unable to do work of any reasonable character, and is entitled to compensation during disability not to exceed 400 weeks. He alleges he was receiving $3.50 a day, or a weekly sum of $21, at the time of the injury, 65 per cent of which is equivalent to the sum of $13.65, the sum sued for per week.

Defendant in answer admits plaintiff was in its employ on the date of the alleged injury, but denies the injury alleged; denies plaintiff's wages amounted to the sum alleged, but avers that plaintiff was being paid not exceeding $2.03 per day at the time; that due to business depression defendant was operating its logging business only 3 days each week at the time of the alleged injury, and as a result plaintiff was being employed for only 3 days per week, as a regular schedule of employment; that, if plaintiff is entitled to any compensation, which is denied, the amount of compensation should be based upon a daily wage of not exceeding $2.03 per day for not exceeding 3 days to the week, or a total weekly wage of $6.09; that 65 per cent of this sum would amount to only $3.95. Defendant, accordingly, prays that plaintiff's demands be rejected, and in the alternative, if the court should give compensation, same should not exceed $3.95 per week.

## MERITS

The evidence shows without doubt that plaintiff has hernia. Plaintiff testified that on November 12, 1930, he and his partner, under orders of the log scaler, were trying to put a small pole across the railroad track, to protect the track from some trees to be felled upon the track; that the pole turned, as he expressed it, and jerked him and hurt him in his left side; that he complained at the time to his partner, but continued to work the remainder of that day; that his employer did not work him any more until the following Monday, which was the 18th, on which day he was engaged in sawing down a tree; that he was standing in a "strain," and as the tree fell the saw became hung or jammed and he jerked it, and then it was that the hernia developed. He says it made him sick for a few minutes. His testimony regarding the two incidents and the resulting injury is corroborated by Steve Cedars, who was plaintiff's saw partner working with him at the time; also by some other witnesses who were near the scene, some one of whom drove plaintiff in a car home and to Dr. Burham for medical attention. The doctor immediately diagnosed the injury as hernia and secured a truss for plaintiff to wear. Under advice of the doctor, plaintiff is still wear-

ing the truss. Dr. Burham testified that it is a mild, slight hernia, about the size of one finger. He says he advised an operation. But it seems plaintiff would not agree to it, and contented himself with wearing the truss. When asked if the man could do ordinary work, Dr. Burham says to give him 60 or 90 days' rest he could, as "most injuries would get well in that time, taking it for granted a hernia would get well." The doctor says, if plaintiff would take another month's rest, he could work.

Dr. Phelps, who examined plaintiff on the day of the trial, testified he could not tell as to how old the hernia was, nor whether it was traumatic or not. He says he is of the opinion that, if plaintiff should remove the truss, the bowel would go down into the scrotum, as the "ring" is large enough to permit it to do so. Dr. Phelps was not asked for an opinion as to whether plaintiff was able to work.

Defendant contends that the hernia was of long standing, and that the injury, if any, had nothing to do with it. We think from the evidence in the case it is fair to conclude that, even if plaintiff did have hernia in process of development, and that is not definitely shown, the injury was sufficient to, and did, quicken and accelerate the development. It is well settled that, where an injury accelerates and hastens the development of a disease in process of development, the injured person is entitled to relief.

Up to the date of trial, which was near two months after the injury, plaintiff had not recovered, neither is it shown conclusively that he was at that time able to do work of a reasonable character. He still needed complete rest for at least 30 days. Much weight should be given to the conclusions of the trial judge in such matters,

and, as he found plaintiff to be disabled at the time, we cannot, under the evidence, say the judge was in error. We think plaintiff did in fact suffer an injury on or about the date alleged, and while in the course of his employment, and from that injury he was and still is disabled from doing work of any reasonable nature. Just how long the disability will continue we cannot tell.

As to the amount of compensation allowed, we cannot agree with the trial judge. It seems that neither counsel for plaintiff nor defendant knows upon just what basis the judge arrived at the amount of compensation granted. Plaintiff was being paid by the thousand feet for cutting logs. He was not being paid a flat daily wage. In the case of Boyett v. Urania Lbr. Co., Ltd., 8 La. App. 132, cited by counsel for defendant, the court held that: "'Daily rate of pay' means one-sixth of the average weekly earnings of the employee during a six-day week and that the 'weekly sum' to which the employee or his dependents are entitled is the specified percentage of an amount equal to six times the 'daily rate of pay' so arrived at." The court, however, in the syllabus inserted by it, says:

"As a general rule six days constitute a working week and will be adopted as such where it is not alleged and proved that a different rule existed."

The court further sets forth in its additional syllabus in that case that:

"In arriving at the daily wage of one engaged in felling trees and sawing them into logs at a fixed price per thousand feet, board measure, no definite rule can be established, and each case must depend on its own particular facts and circumstances."

The dispute in the Boyett case was as to the daily wage of plaintiff who was en-

gaged in work by the "piece," presumably cutting logs by the thousand feet. He worked 18 days in November, 14 in December, and had worked 6 in January up to his death on the 17th of the last-named month, making a total of 38 days work during those 3 months. He received $134.10 for the 38 days. The lower court divided the $134 by 38, and thus arrived at the daily wage as being $3.55 per day. The upper court approved of this manner of estimating the compensation. Thus it will be seen that the rule of multiplying the daily wage received by 6 in order to find the "weekly sum" does not always apply. It does not apply in cases where defendant alleges and proves that a different rule exists, as in the case of cutting logs by the thousand feet instead of working for a daily wage.

In Smith v. Butler, 7 La. App. 338, cited by counsel, plaintiff was working regularly 5½ days a week, and his compensation was based upon the daily rate of pay multiplied by 5½ instead of by 6. In Colquette v. Louisiana Central Lbr. Co., 11 La. App. 140, 119 So. 714, plaintiff was working 7 days a week, and his "weekly sum" was found by multiplying his daily wage by 7. We think such a basis for adjustment both legal and just. Suppose a person was employed regularly only one day a week, and received an injury. Certainly the law does not contemplate that compensation be paid on the basis of the wage received for the one day multiplied by six. As stated by the court in the Boyett case, supra, the facts and circumstances of the employment should be taken into consideration, and especially where the work is that of cutting logs by the thousand feet, or doing work by the piece.

The testimony shows conclusively that at the time plaintiff received the injury, and for some months previous, and some months after, the logging department of defendant was being operated on a regular schedule of 3 days a week. This was the case when plaintiff accepted employment, and continued down to the time of the accident. It was well understood by plaintiff and all of the other employees. Three work days in a week was all any of the employees were promised, and was all they expected, and all they received pay for. The testimony seems to show that plaintiff's average daily earnings from the work he was engaged in, that of cutting logs by the thousand feet, board measure, was $2.03.

Both plaintiff and his saw partner testified that the two together cut on an average of 16,000 feet. Neither one stated how much they were being paid per 1,000 feet. Mr. Brown, the log scaler, corroborated the statements of these two men, but he made no mention of how much was being paid for the work. Mr. Adams, of the claims department of the insurance company, testified that his office received a written report on the accident; that this report showed that plaintiff's earnings amounted to $2.03 per day. He made no mention of how much per 1,000 feet the report showed was being paid. Steve Cedars, plaintiff's co-worker, said that his and plaintiff's average earnings was about $2 a day. We conclude, therefore, that $2.03 is correct. On the basis of 3 work days a week, the weekly earnings is $6.09, and 65 per cent of that sum is $3.95.

For the above reasons, the judgment of the lower court is amended so as to reduce the amount of weekly payments from $6.75 to $3.95 per week, and as thus amended, the judgment is affirmed; cost of appeal to be paid by plaintiff.