No. 834

First Circuit

LEWIS v. LAKE CHARLES
STEVEDORES, INC.

(June 30, 1931. Opinion and Decree.)

C. V. Pattison, of Lake Charles, attorney for plaintiff, appellant.

Moss & Siess, of Lake Charles, attorneys for defendant, appellee.

MOUTON, J. In May, 1930, plaintiff, while unloading a railroad box car at the docks at Lake Charles, was injured by a piece of timber that fell on his head. He alleges his brain and skull were seriously injured, causing as a direct result, complete loss of his sense of taste and smell, stiffness of the neck, and the loss of feeling in his left leg.

He alleges total disability to do work of any reasonable character as being the result of the foregoing alleged injuries. In case the court denied him compensation for total disability, he asks in the alternative compensation at $20 a week for .100 weeks on the ground that the usefulness of the physical function of taste and smell has been seriously impaired.

He appeals from a judgment rejecting his demand.

Plaintiff testified that the blow he received knocked him unconscious. Two or three witnesses who were unloading the timber with him, saw when he was struck on the head, and all say that they immediately thereafter talked with him, and that he was certainly not unconscious.

Dr. Kushner saw plaintiff on the day of the accident and treated the wound. His testimony is that he suffered a lacerated scalp wound, about an inch long, that had just gone through the skin, had not affected the tissues underneath, was not gaping, and did not require stitching.

An injury of that character is not likely to seriously affect a man's brain and skull, which plaintiff alleges he suffered as a result of the blow. The fact is, that there is no evidence that he was so affected. There was certainly no fracture of his skull, which is shown by the x-ray examination of his head; also by the testimony of the physicians. Where there has been no fracture of the skull the clear preponderance of the expert testimony shows that there will be no loss of the sense of smell and taste.

Dr. Goldsmith, expert witness for plaintiff, was asked when the injury received did not fracture the skull whether it could affect the sense of taste and smell. He answered: "It is possible." Was then asked: "Is it likely?" To which he said: "There is a possibility which is not so probable." Even according to the testimony of Dr. Goldsmith such a loss did not fall within the range of probabilities.

Plaintiff testified that since the injury he had lost his sense of taste and smell, and some tests were made for the purpose of ascertaining his condition in that respect. The majority of the experts, including Dr. Goldsmith, testified that tests to ascertain as to whether there is a loss of the sense of taste and smell are purely subjective, and that the party testing must rely on the patient for information.

In testifying on this subject, Dr. Holcombe said: "If he has a total absence of

smell and taste he is without a parallel in any traumatism I have ever seen, because he would have to have an injury on both sides of his brain, on the back of his brain and the front of his brain."

There was no such injury in this case and it is impossible to conclude from the evidence of the expert testimony, and the nature of the wound plaintiff suffered, to say if he really had no sense of taste or smell and that if he suffered therewith, it had any causal connection with the blow on his head. No such conclusion can be reached from an examination of the evidence.

Plaintiff claims that he suffered a wry neck, also the loss of feeling in his left leg, as a result of the accident.

It was shown by Dr. Kushner and a number of employees at the docks where plaintiff was working, that prior to the accident he always carried his head on the side, the same as he did thereafter.

Dr. Bordelon, expert witness for plaintiff, said that there are many causes bringing about a stiff neck, due, he said, sometimes to congenital deformity, occupational work, etc.

Dr. Watkins said that it might be the result of chronic prostrate gland or bad tonsils. Such a trouble as appears from the expert evidence might be the result of various causes.

As it appears that plaintiff had a wry neck before he received the blow, it would be reasonable to infer that it might have been a congenital deformity or had been the result of one of the many causes which the physicians said may bring about such a trouble. It would certainly be illogical to say with legal certainty that the accident was the real cause of plaintiff's wry neck.

Drs. Bordelon and Goldsmith pricked his left leg with a needle or pin, and say he showed no muscular reaction or apparent sensations of pain. Dr. Goldsmith said it would take a man of iron courage to stand that test without manifesting sensations of pain. Dr. Kushner says a person can, if he makes up his mind, withstand such a test with a small needle.

Dr. Watkins made a test with a pin. His testimony is that plaintiff said he felt it; also, that he did not feel as well in the left as he did in the right leg.

This question is left much in doubt by the evidence, and leaves still more in doubt the issue as to whether the condition of plaintiff's leg, if it had lost all sensibility as contended for by plaintiff, was, as alleged by him, the result of the injury he suffered.

It is impossible to say from the evidence in this record what is the cause or causes which brought about the troubles of which plaintiff complains. There is a possibility or a probability that these troubles were the result of the accident but that is not sufficient to sustain plaintiff's demand. He should have established that fact with legal certainty to entitle him to recover. Having failed to do so his demand was correctly rejected.