No. 4116

Second Circuit

(Second Division)

---

### SWEET v. LOUISIANA LONG LEAF LBR. CO.

---

(December 9, 1931. Opinion and Decree.)

---

Fern M. Wood, of Leesville, attorney for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

DREW, J. This is a suit under the Workmen's Compensation Act (Act No. 20 of 1914, as amended). Plaintiff alleged that he was an employee of defendant company, working at one of its dry sheds in March, 1930; that defendant is engaged in the sawmill business, and owns and operates in connection therewith dry kilns and dry sheds for the purpose of drying lumber; that, while engaged in the work he was employed to do, a piece of lumber he was handling struck him in the right eye, injuring the said right eye so as to result in the loss of the vision of the eye. Plaintiff further alleged that at the time he was earning $2.50 per day, and, at the time he was injured, was performing services arising out of and incidental to his employment in the course of his employer's trade, business, and occupation. He alleged the loss of his eye to be permanent and total, and prays for judgment for 65 per cent of his daily wages for a period of one hundred weeks, beginning. March 3, 1930, the day the injury occurred.

Defendant in answer admits the employment of plaintiff, and that at the time alleged he was in the employ of defendant performing services arising out of said employment; denies that he was injured as alleged, or that he received any accidental injury while in its employ; admits that he was receiving the wage per day, as alleged; and, further answering, it avers that the loss of vision or impairment to plaintiff's eye is in no manner due to an accidental injury to said eye as the result of or growing out of plaintiff's employment with defendant, but is due entirely to diseased condition or conditions caused by events in no manner connected with his employment.

The case was tried on these issues in the lower court and resulted in judgment for plaintiff, as prayed for from which judgment defendant has appealed.

In order for plaintiff to recover, it is necessary that he prove, first, an accidental injury; and, second, that the injury received caused the loss of vision of his right eye. We think he has failed in both instances, and certainly in the second.

There are only five witnesses in the case: The plaintiff, Dr. Harvey Dillon, Dr. Connally, Dr. Gandy, and B. H. Wynn, the foreman under whom plaintiff was working. Plaintiff alleged that he was struck in the eye by a piece of lumber he was handling, and, when testifying, was asked the following questions by his attorney:

"Q. What were you doing when you sustained injury to your eye? * * * Go ahead and state to the Court what happened, just tell the Court how you got hurt.
"A. I worked in the dry shed, I do dry shed work, and a cinder or splinter got in my eye and caused me to go to the doctor for it; and that inflamed it. For several days I could not get the splinter out.
"Q. Monroe, I ask you do you say that on the 3d day of March, 1930, while working with defendant Company, a piece of

lumber struck you in the eye? Is that right?

"A. Yes, sir."

Later on in his testimony he stated that he was struck in the eye by a 1x3 that broke, and in rebuttal he said that, when he was struck in the eye, it knocked him out, and that he did not know anything for a while. It can be readily seen that, before being prompted by his attorney, his testimony was that he got a cinder or splinter in his eye, and later says he was struck by a 1x3 in the eye, and, finally, when placed on the stand in rebuttal, he says that the lick knocked him out and he knew nothing for a while.

When plaintiff reported to Dr. Connally, which he claims was the same morning he received the injury, he told Dr. Connally that he had some trash in his eye. He offered no other witnesses to the accident, and did not report it at any time to his foreman, Mr. B. H. Wynn, who was on the job all the time. The following question was asked Mr. Wynn:

"Q. State to the court if this plaintiff, Monroe Sweet, ever came to you during March and told you about sustaining an injury while working for you?

"A. Why he never did claim to me of being hurt on the work, and fact-of-business, he never claimed to me of being hurt at all, getting hurt. He claimed of having trouble with his eye, but did not give the cause for it, and the first I knew he was even claiming to be hurt, at all when I did not know anything about it, his claiming to be hurt on the works, until the time we were summoned over at the office after he consulted a lawyer."

Mr. Wynn further testified that he saw plaintiff every day, and that he was the man for plaintiff to have reported the accident to, and that, if he had received a lick in the eye as he claimed, he (Wynn) would have known it, as he was around the kiln all day every day; that plaintiff continued to work until June, 1930, when he was arrested and put in jail.

Plaintiff testified that he went to Dr. Connally the same morning he received the injury. Dr. Connally testified that plaintiff said that he thought he had some trash in his eye; that he examined the eye very closely, and found nothing in the eye, and, after further examination, concluded the eye was out. He says there was no inflammation to speak of. Plaintiff did not tell Dr. Connally that he had been struck in the eye, and, from the doctor's testimony, there was nothing to indicate that he had, as there was no injury to the eyeball and no bruise of any kind. Dr. Connally took plaintiff to see Dr. Harvey Dillon the next day and, although Dr. Dillon is plaintiff's witness, he corroborates Dr. Connally in every respect—no bruise about the eye and no outward injury to the eye. If plaintiff had received the blow as he described it, it is certain that the eye would have been inflamed, bruised, and black when he called on Dr. Connally, and the following day when he called on Dr. Dillon. Both Dr. Connally and Dr. Dillon are positive that plaintiff was blind in the right eye when he came to see them.

Plaintiff, we think, has failed to show an accident while in the employ of defendant that caused injury to the eye, and this alone would bar him from recovery. However, the testimony of Dr. Dillon and Dr. Connally, who examined him immediately after the time he claims he was injured, is positive that the loss of vision was caused by disease and not by trauma.

Dr. Gandy, who examined plaintiff just before the trial, is also positive that the loss of vision was caused from disease and not from trauma. There is no testimony to offset that of the three doctors, except the plaintiff himself, and all three doctors testified that it is not unusual for a laborer, such as plaintiff, to be blind in one eye and not know it and to express great surprise upon being informed of his condition.

Plaintiff lays great stress upon the fact that a Wassermann test made by Dr. Gandy of plaintiff showed negative. However, without contradiction, all three doctors testified that such a test is not conclusive of the subject; that, when the Wassermann shows positive, they accept it as true, but, when it shows negative, they do not accept it, as in many cases the test shows negative when the person is afflicted with the disease of syphilis. All three doctors are of the opinion that the loss of the eye was caused by disease, and there is no testimony to rebut it. We therefore have to accept it as the cause of the loss of vision. Two of the doctors are specialists and the other a general practitioner. Weller et al. v. Turnerized Roofing Co. et al., 14 La. App. 150, 129 So. 443; Williams v. International Paper Company, 12 La. App. 139, 125 So. 596; Brent v. Union Indemnity Company, 17 La. App. 689, 135 So. 735.

The judgment of the lower court in favor of plaintiff is erroneous, and will have to be reversed. It is therefore ordered, adjudged and decreed that the judgment of the lower court be reversed, and the demands of plaintiff be rejected, at his cost in both courts.