JACKSON v. TRAVELERS' INS. CO. et al.

No. 4652.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1934.

Thatcher, Browne, Porteous & Myers, of Shreveport, for appellants.

Jack & Jack, of Shreveport, for appellee.

MILLS, Judge.

This suit is brought by plaintiff to recover, under the provisions of Act No. 20 of 1914, as amended, compensation for the death of her husband.

Pack Jackson, the deceased, a negro laborer, had been for a number of years prior to and was on May 6, 1932, employed by E. Foster Schuler, with a crew in loading crossties from stacks along railroad tracks into freight cars. On the date mentioned he was so engaged near Longstreet, in De Soto parish. The ties were of pine, eight feet long, and weighed something over 200 pounds each. The testimony of the negroes in the crew is confused as to the work Pack was doing at the time he was disabled. After considering it all, we are satisfied that Pack, with Abram Edwards, one at each end, was engaged in lifting a tie from near the bottom of a stack onto the shoulder of Sam Redwine, a height of four or five feet, who in turn carried it to the car within which it was placed in position by a negro named Juney Clark.

On the morning in question the men had worked from 7 to about 10, when Pack suffered a disability, thus described by Sam Redwine: "Pack and myself were lifting cross ties together and we picked one tie up and he weakened down on his end and put his hand to his side and said, 'I done jerked a kink in my side.'"

Juney Clark was in the car "pulling" ties and did not know of the incident until immediately after its happening. He says that he saw Pack holding his stomach and heard him say the tie had hurt him.

Abram Edwards testifies as follows: "I turned going towards the car and I came back and I seen him holding his stomach and he strained hisself."

Again: "I don't know how he hurt hisself, but he said he hurt hisself and was holding his side, so I didn't see it."

Humphreys Jackson, a brother of deceased, and the only other witness present, alone described the happening of anything unusual. He says that as Pack raised the tie it slipped. We quote him in full:

"Pack and Blue were raising ties and raised a tie on Sam Redwine and the tie slipped and he said it hurt him. A few minutes later he pulled his gloves off and handed them to me and said he wasn't able to work. I went on

about my work. Then I always tote water most of the time and tried to get him to go after water and he said he thought he was bleeding, but he wasn't. That was all—he sat around there a good while and walked over all the yard—come back and I walked over and asked him if he would be able to work this evening and he said after he eat he would see. He went to eat dinner and when he come back he spit up blood.

"Q. Did you see Pack hurt himself? A. He couldn't work any more, he tried but he didn't do a lick of work.

"Q. Did you see him? A. See him? I was coming out. You see, raising ties. One going and one coming all the time. When they put one on me when I come back he said he was hurt. I was going into the car but he raised the tie on Sam Redwine's shoulder."

Considering the fact that no other witness, not even the man lifting with the deceased, testifies to any slip, we are satisfied that Humphreys saw none and that his statement to that effect is a conclusion drawn by him, and not a fact.

While the petition alleges that deceased "stooped to an awkward, cramped position and lifted a cross tie from the ground to the height of a man's shoulder so that he sustained an unusual strain," there is no testimony that Pack was in a cramped or awkward position or suffered an unusual strain. He was disabled while doing the usual work he was employed to do, in the same way he had been doing it for many years, without the intervention of any sudden happening of any kind. Unquestionably it is an effort to stoop and lift, to the height of a man's shoulder, even with the assistance of another man, a cross-tie weighing over 200 pounds; but it was not an unusual effort to this negro laborer. He was not even doing the work in the most arduous way, as the testimony shows that on many occasions the men "head" the ties themselves; that is, each man, bearing the whole burden of its weight, lifts and carries his own tie. We have gone into the nature of the work done and the particular happenings on this occasion at some length because one of the defenses urged is that the disability was not due to an "accident," as defined in our Workmen's Compensation Act (No. 20 of 1914, as amended).

Section 2 of that act, as amended by Act No. 85 of 1926, provides that if an employee "receives personal injury by accident arising out of and in the course of such employment his employer shall pay compensation in the amounts and on the conditions and to the person or persons hereinafter provided."

Then, to recover under the act, a workman must not only suffer an injury in the course of his employment, but that injury must be caused by an accident arising out of said employment. This is emphasized by the fact that in section 38, as amended by Act No. 38 of 1918, the act proceeds to define as follows just exactly what it means by "accident": "That the word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."

The only thing happening suddenly and unexpectedly in this case was the disability, not any event causing it, which could be construed as an accident.

■ We are aware, and approve of, the decisions of our courts to the effect that the terms of the act should be construed liberally in favor of the workman. Knispel v. Gulf States Utilities Co., 174 La. 402, 141 So. 9; Clements v. Luby Oil Co., 170 La. 910, 129 So. 526. But article 13 of our Civil Code reads that: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Construction cannot be employed where there is nothing in the nature of an accident to construe, such as unusually heavy exertion while in a strained or awkward position, stumbling, sudden shifting of the weight of a heavy burden, overworking in extreme heat, etc. If the workman in this case suffered an accident at time specified, he suffered one every time he lifted a tie during the many years of his employment. So, in this case where the only proof offered is that of disability, to allow compensation we would have to bodily delete the word "accident," as defined, from the act, a purely legislative function beyond the power of courts. Laurant v. Dendinger, Inc., 11 La. App. 77, 120 So. 246.

■ The plaintiff in a compensation case must prove the fact of an accident happening to him and a causal connection between such accident and an injury. Cordray v. Standard Oil Co., 9 La. App. 458, 121 So. 220; Sweet v. Louisiana Long Leaf Lbr. Co., 18 La. App. 238, 138 So. 171; Nowaski v. Continental Flat Glass Co., 4 La. App. 524.

■■ There are a number of cases in our jurisprudence holding that a strain or overexertion in intense heat is equivalent to an accident. Becton v. Deas Paving Co., 3 La. App. 683; McMullen v. Louisiana Central Lbr. Co., 3 La. App. 562; Wright v. Louisiana Ice & Utilities Co., 14 La. App. 621, 129 So. 436, and Id., 19 La. App. 173, 138 So. 450; Anderson v. Louisiana Oil Ref. Corp., 16 La. App. 294, 134 So. 343; Patrick v. Grayson & Yeary, 13 La. App. 228, 127 So. 116.

"Strain" is not defined in the act. It is in Webster as "to extend with great effort, to extend to the utmost, to stretch beyond

its proper limit, to injure the muscles or joints by causing to make too strong an effort, to harm by overexertion."

There is no evidence in the case of such a condition, the workman doing his work in the easier way. There is no evidence that the day was unusually hot. The accident occurred on the 6th day of May—not during our hottest season. There is no proof to support the allegation that deceased was in an awkward position other than that he stooped to pick up his end of the tie. In fact, the disability did not occur while he was stooping, but after he had raised the tie. We find then that the record is barren of proof of any unexpected or unforeseen event other than that deceased suffered a disability, or of any condition or circumstance that we can even liberally construe as an accident.

Said section 38, as amended by Act No. 38 of 1918, provides further: "The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

On the day following the occurrence testified to by his co-workers, Jackson reported to Dr. Boone for treatment, who in turn called in Dr. Paine. The patient was taken to a sanitarium where he died on May 12th.

In order to determine the nature of the deceased's trouble and the cause of his death, an autopsy was performed by Dr. Butler, Caddo parish coroner, assisted by Drs. Paine and Boone. His report gives the following anatomical diagnosis: "Discoloration of the viscera; marked paleness of gums and mucus membranes; collapse of the lungs; dilation of right side of heart, with myocarditis; arteriosclerosis and aorta, with atheroma, apparently Luetic; hemorrhage from stomach wall; tuma formation of stomach near pylorus; marked amount of hemorrhage in small and large intestines; slight enteroidea; marked thinness and paleness of the blood."

He further states, in his report, that his attention was called to some history of accident or traumatism, but that "no evidences of traumatism could be found anywhere." He gives as the cause of death, "Dilation of right side of the heart, with arteriosclerosis and myocarditis; secondary anemia from hemorrhage of stomach walls."

Dr. Harold Quinn, for plaintiff, testifies:

"Q. Without any accident, doing the usual work, I have understood you to say that his death would have come as it did come? A. That's right."

He testifies that had the man gone to bed and abstained from any exertion, he might have lived three or four years, but that he was approaching death, which was hastened by the exertion of heavy manual labor. That any heavy manual labor would have caused the hemorrhage to the stomach, and death. That deceased had syphilis probably for years, with an aneurism, and that the syphilitic infection would have inevitably, in time, caused his death. That the sudden exertion superimposed upon a pre-existing condition, hastened his death. He finally says that doing light work or office work, he would possibly live a couple of years; doing no work at all, four or five.

Dr. Walke, also a witness for plaintiff, testifies that the lifting of the heavy tie was the immediate, and the physical condition the remote, cause of the death. That the exertion hastened his death.

Dr. Richard Brown, for plaintiff, answering to a hypothetical question embracing the facts in the case and the finding of the coroner, says: "There was the heart, already overburdened, and was attempting to meet its work. But this continuance of the heavy work, this last cross tie, was too much for the heart and it gave way. It had reached the peak of its efficiency, as shown by the previous hypertrophy, and so could no longer meet the demand, and dilated."

He says further that the exertion was a major contributing cause of the death; that if he had not subjected himself to hard labor on May 6, he probably would have lived longer.

Dr. W. L. Kerlin, in answer to the same hypothetical question, says that deceased had some defect in the blood vessels of the stomach walls and that the heavy lifting brought on the hemorrhage which hastened his death. He states that the lifting was a predisposing cause and not a major cause of the death. In other words, that the lifting of the tie did not cause any of the troubles that caused the death. It merely hastened the inevitable result of those ailments. He agrees with Dr. Butler as to the cause of death, and says that the same result might have followed any exertion, such as walking upstairs, or even while in bed asleep; that deceased died because he worked when not able to work.

According to Dr. W. B. Hewitt, coroner of De Soto parish, the death of Jackson was hastened by the exertion of lifting the last tie. "I think conditions just got right at that particular time, and when this particular tie was lifted that was the straw that broke the camel's back." The condition of plaintiff, then, was such that an additional "straw," not an unusual strain, was all that was required to break him down. He says that he does not think that the deceased could have lived several years in any event. In answer to the question propounded by counsel for the plaintiff if the stooping did not cause unusual strain, he answered: "I don't think

that had any particular bearing on the case, on the hemorrhage or rupture either."

None of above expert witnesses for plaintiff ever saw or treated deceased. They answered entirely in reply to hypothetical questions.

For defendant, Dr. Butler, who performed the autopsy, testifies that the hemorrhage was due to disease process; that he could find no connection between the hemorrhage and any external cause; that the physical condition of deceased was such that a hemorrhage was liable to occur at any moment under any conditions. As to the hemorrhage being caused by traumatism, he says: "I think from actual knowledge of this particular case and from direct examination of the material and an eye-examination of the inside of the stomach, and walls of the aneurism, I don't expect that rupture can have occurred in the thin part of the aneurism, and I can not understand how such a strain would cause a rupture of the small end of the vein inside of the stomach wall."

There was no tearing or breaking loose, as would naturally result if the hemorrhage was due to strain. There was no mechanical damage whatever. He attributes the hemorrhage in the inner or mucus wall of the stomach to progressive syphilis.

Dr. Paine, who examined the case before death and assisted at the autopsy and thus saw the actual condition, says that death resulted from the hemorrhage of the small veins in the lining of the stomach from a space three inches square about the middle of the larger curvature, which was caused by, and was a natural result of, advanced syphilis; that deceased's condition was such that a hemorrhage was likely to occur at any moment, with or without exertion. He saw no connection between the strain and the hemorrhage, and said: "From my examination I don't think the alleged strain had anything to do with causing the hemorrhage."

Dr. Boone, who attended the deceased before death, and also assisted in the autopsy, says that he saw no connection between the strain and the death of Pack Jackson.

■ The opinions of physicians who saw deceased are of greater weight than those who did not. Hammons v. Edwards, 9 La. App. 62, 118 So. 852; Arender v. Grant Timber & Mfg. Co., 9 La. App. 132, 119 So. 498, 499.

Especially is this true of competent physicians who perform an actual autopsy. We understand that an autopsy is the only certain way to determine the cause of death.

Even if an accident is proven, a causal connection must, by a fair preponderance of the evidence, be established between it and the disability. Howerton v. McCrary (La. App.) 144 So. 68; Hammons v. Edwards, supra; Lewis v. Lake Charles Stevedores, Inc., 17 La. App. 579, 135 So. 630; Abelleira v. Johnson Iron Works Co., 18 La. App. 310, 137 So. 908; Sweet v. Louisiana Long Leaf Lbr. Co., 18 La. App. 238, 138 So. 171.

■ Adopting then the view of Drs. Butler, Paine, and Boone, which we feel compelled under the jurisprudence to do, we find that Jackson's death was not caused by any accident or strain or even by the lifting of the tie, but was due to a hemorrhage of the veins in the wall of the stomach caused by progressive syphilis. That the diseased condition was not due to any violence to the physical structure of the body and did not naturally result therefrom, as required by section 38 of the act. That he suffered a hemorrhage while lifting the tie, but not because of that fact.

■ If an injury is not the direct result of an accident, compensation should still be allowed if it is legally proven that the accident excited and made active a dormant disease or infection which in turn caused disability or death. Behan v. J. B. Honor Co., 143 La. 350, 78 So. 589, L. R. A. 1918F, 862; Fox v. United Chemical & O. P. Co., 147 La. 865, 86 So. 311; Broussard v. Union Sulphur Co., 5 La. App. 340.

Or if the accident accelerated and aggravated an already active disease or infection. Million v. W. K. Henderson Iron Works & Supply Co., 2 La. App. 539; Brooks v. Lewis-Chambers Const. Co., 13 La. App. 402, 128 So. 321; Danzy v. Crowell & Spencer Lbr. Co., 16 La. App. 300, 134 So. 267.

■ An employee already afflicted with disease carries the burden of proving with reasonable certainty that the disease or infection was activated or aggravated by the accident. Possibility or even probability is not sufficient. Haddad v. Commercial Motor Truck Co., 150 La. 329, 90 So. 666; Brent v. Union Indemnity Co., 17 La. App. 689, 135 So. 735; Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734.

This doctrine is well expounded in the case of Arender v. Grant Timber & Mfg. Co., supra:

"There is no point more clearly and firmly established by our jurisprudence, as well as that of other states, than this: That in suits for compensation under Workmen's Compensation Acts for death or disability, if it be shown that the injury complained of hastened death from a disease from which the employee was suffering, and from which he would ultimately have died, or if such injury aroused and caused to become active a dormant disease, or quickened and accelerated an active, progressive disease, from which disability results, it will be held that such death or disability was due to the injury and compensation will be awarded. [Citing cases.]

"But in such cases there can be no recovery, unless the evidence establishes with some degree of certainty that there was some con-

nection between the accidental injury and the death or disability, as the case may be."

In Schultz v. Mundet & Son (La. App.) 146 So. 177, it was held that, where accident itself, if there had been no intervening subsequent disease, would manifestly have been trivial and of no importance, plaintiff must show by a preponderance of the evidence and with legal certainty that the subsequent disease was caused by the accident. Hamilton v. La. Central Lbr. Co., 12 La. App. 296, 125 So. 492; Williams et al. v. International Paper Co., 12 La. App. 139, 125 So. 596.

■ Considering the requirements of section 38 as to compensable injury, the above jurisprudence, and the testimony of Dr. Butler, for many years coroner of Caddo parish, and Drs. Paine and Boone, who attended deceased and assisted in the autopsy, that they could find no connection between the fatal hemorrhage and any external cause, we cannot find that plaintiff has discharged the burden of proof imposed by the above decisions.

The expert witnesses testifying for plaintiff are all physicians of the highest standing. Their opinions, where conflicting—for they by no means entirely conflict—cannot prevail over the positive testimony of the equally eminent members of the medical profession who performed an autopsy.

We conclude that the death of Pack Jackson was directly due to active, progressive syphilis; that the ravages of the disease had so thinned the tissues of the veins in the walls of his stomach that a hemorrhage was liable to occur at any time under any conditions; that it did occur while he was at work, but that it was not caused, activated, or materially accelerated by any accident arising out of his employment.

The judgment appealed from is annulled, avoided, and reversed, and judgment is now rendered rejecting plaintiff's demands, brought in forma pauperis.

DREW, Judge (dissenting).

I seriously dissent from the majority opinion of this court in this case. Although I seldom write a dissenting opinion, I feel called upon to do so now owing to the fact that it is my belief, if the majority opinion herein be allowed to stand, that all former jurisprudence of the Courts of Appeal and Supreme Court of this state, defining an "accident" within the intendment of the Workmen's Compensation Act of Louisiana, is overruled, and we will start with this decision under a new line of jurisprudence, in so far as what constitutes an accident under said act.

I think the decision is in direct conflict with the leading cases on the subject, such as: McMullen v. Louisiana Central Lbr. Co., 2 La. App. 773 and Id., 3 La. App. 562; Becton v. Deas Paving Co., Inc., 3 La. App. 683; Patrick v. Grayson & Yeary, 13 La. App. 228, 127 So. 116; Wright v. La. Ice & Utilities Co., 14 La. App. 621, 129 So. 436, and Id., 19 La. App. 173, 138 So. 450; Anderson v. La. Oil Ref. Corp., 16 La. App. 294, 134 So. 343; Hicks v. Meridian Lbr. Co., 152 La. 975, 94 So. 903; Blackman v. Hope Engineering & Supply Co., 11 La. App. 92, 120 So. 682; Womack v. Highway Const. Co., 18 La. App. 111, 137 So. 210; Mustack v. Union Indemnity Co. (La. App.) 147 So. 749; and numerous other cases involving hernia caused by straining, in performance of the usual and customary work of the employee.

The majority opinion holds that, regardless of an employee's diseased condition, if he were doing the work he was employed to do in the customary and usual manner, even though the work is so heavy that his condition will not stand for it, and in performing this work he receives an injury which caused death, it is not an accident within the intendment of the Workmen's Compensation Act of Louisiana.

This doctrine in my opinion is set forth in the following part of the majority opinion:

"While the petition alleges that deceased 'stooped to an awkward, cramped position and lifted a cross tie from the ground to the height of a man's shoulder so that he sustained an unusual strain,' there is no testimony that Pack was in a cramped or awkward position or suffered an unusual strain. He was disabled while doing the usual work he was employed to do, in the same way he had been doing it for many years, without the intervention of any sudden happening of any kind. Unquestionably it is an effort to stoop and lift, to the height of a man's shoulder, even with the assistance of another man, a cross tie weighing over 200 pounds; but it was not an unusual effort to this negro laborer. He was not even doing the work in the most arduous way, as the testimony shows that on many occasions the men 'head' the ties themselves, that is, each man, bearing the whole burden of its weight, lifts and carries his own tie. We have gone into the nature of the work done and the particular happenings on this occasion at some length because one of the defenses urged is that the disability was not due to an accident, as defined in our Workmen's Compensation Act (No. 20 of 1914, as amended).

"Section 2 of that act, as amended by Act No. 85 of 1926, provides that if an employee 'receives personal injury by accident arising out of and in the course of such employment his employer shall pay compensation in the amounts and on the conditions and to the person or persons hereinafter provided.'

"Then, to recover under the act, a workman must not only suffer an injury in the course of his employment, but that injury must be caused by an accident arising out

of said employment. This is emphasized by the fact that in section 38 the act, as amended by Act No. 38 of 1918, proceeds to define as follows just exactly what it means by accident: 'That the word "Accident," as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.'

"The only thing happening suddenly and unexpectedly in this case was the disability, not any event causing it, which could be construed as an accident.

"We are aware, and approve of, the decisions of our courts to the effect that the terms of the act should be construed liberally in favor of the workman (Knispel v. Gulf States Utilities Co., 174 La. 402, 141 So. 9; Clements v. Luby Oil Co., 170 La. 910, 129 So. 526); but article 13 of our Civil Code reads that 'when a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.' Construction cannot be employed where there is nothing in the nature of an accident to construe, such as unusually heavy exertion while in a strained or awkward position, stumbling, sudden shifting of the weight of a heavy burden, overworking in extreme heat, etc. If the workman in this case suffered an accident at time specified, he suffered one every time he lifted a tie during the many years of his employment. So, in this case where the only proof offered is that of disability, to allow compensation we would have to bodily delete the word 'accident,' as defined, from the act, a purely legislative function beyond the power of courts."

Under the section quoted, "unforeseen" means unforeseen by the person injured by its occurrence. The standard taken is not necessarily the intelligence or foresight of the average person. An occurrence is unexpected if it is not expected by the person who suffers by it, even though every other man of common sense, knowing the circumstances, would think it certain to happen. The fact that the result of exertion, such as was required of deceased in his usual employment, due to his physical impairment, would have been expected by or contemplated as a certainty by a physician, if he had previously examined him, means nothing in this regard. The words "unexpected" and/or "unforeseen" refer to the results and not to the cause. When deceased attempted to lift the crosstie from near the ground to the height of a man's shoulder, he intended to do exactly what he did; nevertheless if he strained himself in so doing and caused a hemorrhage of the stomach, due to his impaired condition, the injury was due to an accident. The exertion of lifting the tie was too much for his diseased and weakened condition, and the injury received was an accident arising out of his employment. If he had been a strong, healthy man, the lifting of the tie would not have caused any injury. However, the Workmen's Compensation Act does not make any provision for the healthy alone. It protects the employee. It makes no distinction between the wise or foolish, skilled or inexperienced, healthy or diseased employees. All who are rightfully described as employees come within the act. It is the hazard of employment acting upon the particular employee in his condition of health. The term "violence to the physical structure of the body" may have originated from lifting heavy weights or from other provable causes, for instance, intense heat operating directly on the part of the body internally affected, which effect a sudden change in the physical structure or tissues of the body.

I think the record makes it certain that deceased did not know his condition. He had followed this same work for the past six years and had been employed by the same men. Just exactly 30 days prior to the date of injury, he was sick, and was attended by Dr. Johns, who diagnosed his case as constipation and gave him a laxative. He went back to work and continued until the morning of the accident. From all outward appearances, he was a healthy, robust man. On this particular morning he had worked from 7 o'clock until about 10, when he and his coworker picked up a tie weighing between two and three hundred pounds, and had raised it to about the height of a man's shoulder when deceased dropped his end and remarked: "I done jerked a kink in my side." Soon thereafter he spat up blood, later had a hemorrhage of the stomach, and continued to have them at intervals until he died some five or six days later, from hemorrhage of the stomach. An autopsy was held and the full and complete findings reduced to writing. From this finding all doctors in the case testified. The fact that Dr. Butler performed the autopsy to my mind places him in no better position to testify than the other doctors, as his testimony is based upon the same findings used by all the other doctors who testified.

The following doctors testified in the case: Dr. W. S. Kerlin, Dr. Frank Walke, Dr. Richard Brown, Dr. Harold Quinn, Dr. W. P. Butler, Dr. Boone, Dr. Paine, and Dr. Hewitt. All of the doctors, with the exception of Dr. Butler, Dr. Boone, and Dr. Paine, were of the opinion that the death of the deceased was hastened by the accident. Dr. Butler would not say whether it was or not. They all agree that if they had been treating the deceased and had known the condition he was in as was disclosed by the autopsy, they would have forbidden him to do the heavy work he was doing. The credibility of the doctors is not at stake, and the preponderance of the medical testimony is that the accident

caused by the heavy work hastened the death of the deceased, and the strain he underwent, due to his weakened physical condition, was the cause of the hemorrhage of the stomach.

There was no strain on the man out of the ordinary in his line of work. No importance should be attached to that. Neither should we attach any importance to his state of health. An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health. If the degree of exertion beyond that which was usual had to be considered in these cases, there would have to be some standard of exertion, varying in every trade. If the state of health had to be considered, there would have to be some standard of health varying with men of different age.

There can be no doubt that under any circumstances the deceased would not have lived many years longer than he did. And in my mind his death was hastened by the heavy work he was doing. I am convinced that plaintiff's death was caused by an accident arising out of his employment, and that plaintiffs are entitled to compensation under the Workmen's Compensation Act of Louisiana.

I therefore dissent from the majority opinion in this case.