### WYNN v. STANDARD ROOFING CO., Inc.
### No. 1345.

Court of Appeal of Louisiana. First Circuit.
May 8, 1934.

669

M. R. Stewart, of Lake Charles, for appellant.

McCoy, Moss & King, of Lake Charles, for appellee.

MOUTON, Judge.

Plaintiff was employed by defendant company to spread asphalt on the roof of a warehouse in Calcasieu parish. He used a mop to spread the asphalt, and was known as a mopper.

He alleges that he stepped in this asphalt, which was hot, and that occasionally both feet were sprayed with it, splashing from the mop. He claims that, by coming in contact with this asphalt, his feet were heated, blistered, which resulted in an infection disabling him from doing work of a reasonable character.

Judgment was rendered rejecting his demand for damages for compensation, under the Employer's Liability Act (Act No. 20 of 1914, as amended) from which he appeals.

Two physicians, Drs. Fisher and Kushner, testified as experts for plaintiff in the case; Dr. Watkins, as an expert for defendant company, and Drs. Howell and Clement, under appointment by the court.

Dr. Fisher said the injury to plaintiff's feet might have been caused by the hot asphalt he was spreading over the roof.

Dr. Kushner said it was not typical of the disease known as the "athlete's foot."

Dr. Watkins said it was the "athlete's foot," a disease caused by a germ.

Dr. Howell said plaintiff was unquestionably suffering with that trouble; and Dr. Clement testified that he agreed in full with what Dr. Howell had said.

The testimony of Dr. Howell, with whom Dr. Clement agreed, is that the "athlete's foot" disease could not develop in two or three days.

Messrs. Leblanc and Moss, who were working as moppers on the roof with plaintiff, testified that either the first or second day they started to spread the asphalt plaintiff had complained to them of suffering with sore feet. This complaint occurred either on January 17 or 18, 1933.

Mr. Warner testifies that plaintiff worked for him on January 7th or 8th, which was about ten or twelve days before this statement was made to Messrs. Leblanc and Moss, according to their testimony.

It was testified to by witnesses for plaintiff, including his wife, that plaintiff had sound feet prior to his employment as mopper on the roof of the warehouse in question.

The district judge expresses himself, however, on this issue of fact, as follows: "The Court finds that the weight of the evidence is to the effect that Wynn now has 'athlete's foot,' that he had it prior to the time he went to work for defendant on the dock job, and that the work on the job aggravated the disease."

In testifying in reference to the nature of the disease, Dr. Kushner said it was not a typical case of that trouble.

On the other hand, we have the testimony of Drs. Watkins, Howell, and Clement, that in their opinion, it was unquestionably the "athlete's foot" disease.

We have also the evidence of Drs. Howell and Clement, that this disease could not develop in two or three days.

As plaintiff's complaint of sore feet was made to Messrs. Leblanc and Moss on the first or second day of his employment as a mopper on the roof of the warehouse, plaintiff evidently must have had that trouble with his feet when he got on the job. In addition to the testimony of Messrs. Leblanc and Moss on this subject, we have that of Mr. Warner, who says that, while working on another job ten or twelve days before he was engaged in roofing the warehouse for defendant company plaintiff said he was suffering with sore feet.

With that character of evidence, considered in connection with the expert medical testimony of the two physicians, above referred to, that such a disease could not develop in two or three days, we agree with the finding of fact by the district judge that, when plaintiff began work for defendant company on the roof of the warehouse, he was then suffering with the trouble known as "athlete's foot." In such a finding of fact by the trial judge we certainly cannot say that there is manifest error so as to authorize a reversal.

As plaintiff was afflicted with this trouble before he began working for defendant company, it is therefore obvious that it could not have been the result of any accident that

could have occurred during his employment or as being due to any other cause.

Act No. 38 of 1918, p. 60, amending Act No. 20 of 1914, § 38, says: "That the word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom."

The foregoing provisions of Act No. 38 of 1918, now incorporated in section 38 of that act, are practically a reproduction of similar provisions found in sections 38 and 39 of Act No. 20 of 1914, p. 62.

In the case of Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862, which was decided prior to the enactment of Act No. 38 of 1918, the court held that a person receiving an injury, which had activated a dormant disease that some day might have produced disability could recover compensation from his employer.

At that time the word "accident" had the same meaning under Act No. 20 of 1914 as it now has under section 38 of Act No. 38 of 1918, p. 60.

In the Behan Case, it appeared that the plaintiff, while working as a longshoreman, slipped from a ship and fell into the river, causing injury to his head and spine which had the effect of awakening his dormant trouble. Clearly the injury which caused the acceleration of his trouble was the result of an accident.

The court below found that there had been an aggravation of plaintiff's trouble in this case after he was employed by defendant company, but correctly held that the record showed no accident to have happened to plaintiff. If anything "unexpected or unforeseen and violent" had happened to plaintiff that could have been construed as an accident, doubtless some one on the roof of that building at that time would have noticed it and could have been produced as a witness. His fellow workmen and moppers, as were Messrs. Leblanc and Moss, would certainly have been aware of any accident to plaintiff, if there had been an occurrence of that character. The record is silent on this subject.

Plaintiff in his petition alleges that he sprayed the hot asphalt on his feet which was splashed from the mop he was handling. He claims that this splashing occurred, and from that fact draws the deduction that it was unexpected, unforeseen, and violent to the physical structure of his body, and endeavors therefrom to bring his case under the terms of section 38 of Act No. 38 of 1918, defining what constitutes an "accident" and "personal injuries."

Mr. Gilmore testified that this spraying on the feet happened on almost every job, and other witnesses said they had never heard of any one burning his feet with asphalt prior to the claim of plaintiff that he had suffered such an injury.

The fact that no other workman had complained of an injury occurring to his feet in that way would not constitute proof that it could not so happen, but would have the effect of making such a claim rather improbable. The proof is, however, from the witnesses who say plaintiff's feet were sore when he was roofing the warehouse, and from the physicians who examined his feet, that the injury was at the bottom and not on the top of his feet. A good deal of testimony was taken in reference to the quality or character of shoes plaintiff was wearing while on the job; some witnesses saying they were tennis shoes, and others that they were leather shoes with rubber soles. The fact remains, however, that he was wearing shoes, and evidently, if this splashing had been over his shoes, necessarily on the top of his feet, the eruption or blisters, of which he complained, would have been on the top of his feet and certainly not at the bottom where the injury was found.

The court below found there was no evidence of any burns on the top of his feet, saying that the sores were at the bottom of his feet which existed before plaintiff went to work for defendant company, and in this finding we agree.

It might be contended, with some show of reason, if the injury had been on the top of his feet, that this occurred suddenly, unexpectedly, and with violence, considering the great heat of the asphalt plaintiff was spreading on the roof, although, if Mr. Gilmore be correct that such splashing on the feet of workmen occurred on every job, plaintiff could hardly claim that what occurred to him should be construed as being "unexpected and unforeseen," so as to bring his complaint under the term "accident," as that word is used in the statute. However that may be, it is certain that no injury was received by plaintiff from any spraying on the

top of his shoes. As the sores were on the bottom of his feet, the aggravation of the disease could only have been the result of walking on the felt which was placed on the hot asphalt that was spread on the roof by the moppers. Any one suffering from "athlete's foot" or other sores on his feet could naturally expect some aggravation would result if he walked on this felt or so near to it that it would heat up his feet. Such a result, if proper care was not observed, could not be claimed to have been "unexpected, sudden or unforeseen," the elemental requirements to constitute an "accident" as defined by the statute. Not only this, but some violence must accompany the "accident" to bring the injury under the terms of the act. It seems to us that an aggravation to such a trouble brought about by walking over the roof of a building over which asphalt has been spread would be the result of a gradual process, in which the unexpected, unforeseen, sudden, or violent injury, referred to in the statute, would be altogether absent; and hence there would be no "accident" within the meaning of the law, which must be the cause of an aggravation as it is required for the acceleration of a dormant disease to bring the complaint under the ruling in the Behan Case, above cited.

The district judge, in his opinion, refers to the case of Nowaski v. Continental Flat Glass Co., 4 La. App. 524, where compensation was claimed by an employee for tuberculosis produced by inhaling dust and soda ash while working around a glass factory, wherein he was denied recovery because no "definite, specific accident originated or accelerated the disease."

Here no accident accelerated the aggravation of the disease, and for a like reason plaintiff comes under that ruling.

It is shown, as before stated, that plaintiff was suffering with "athlete's foot" prior to his employment. Drs. Howell and Clement, medical experts, say that a person afflicted with that disease by walking and standing on his feet will irritate and aggravate the trouble. It therefore appears, from the opinion of these physicians, that a man while away from his work, by walking or standing on his feet, would aggravate or accelerate this disease. It would therefore be extremely difficult to determine if this aggravation occurred during the working hours of the employee or when away from his work.

In their application of the compensation statutes, our courts have given them a very liberal construction, but have not yet departed from the rule of evidence which requires plaintiffs in these cases to establish their demand with legal certainty, as in other cases. In this case, as the cause of the aggravation might have been the result of plaintiff walking and standing on his feet as well as from the hot roof of the warehouse, the cause of his aggravated injury remains in doubt, thus debarring him from the right to recover for his failure to establish his demand with legal certainty.

Viewing the contested issues from every possible angle, we find that the trial judge correctly rejected the demand.

Judgment affirmed.